Charles R. **CAMPBELL,**
Petitioner-Appellant,

v.

Larry **KINCHELOE,**
Respondent-Appellee.

No. 86–3589.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 7, 1986.

Withdrawn from Submission
Nov. 14, 1986.

Resubmitted June 26, 1987.

Decided Oct. 6, 1987.

Raymond H. Thoenig, Seattle, Wash., for petitioner-appellant.

Kenneth O. Eikenberry, Michael P. Lynch, and Paul A. Silver of Olympia, Wash., for respondent-appellee.

Before SKOPIL and FLETCHER, Circuit Judges, and VUKASIN,[*] District Judge.

SKOPIL, Circuit Judge:

Charles Campbell appeals the district court's denial of his petition for habeas corpus. He challenges the imposition of a death sentence following his convictions for aggravated first degree murder. His arguments on appeal concern (1) the propriety of the prosecutor's closing arguments during the penalty phase of the trial; (2) the admissibility during that phase of evidence of a prior conviction; (3) the effectiveness of the assistance of his counsel; and (4) the constitutionality of Washington's capital punishment statute. We reject Campbell's arguments and affirm.[1]

---

[*] The Honorable John P. Vukasin, Jr., United States District Judge for the Northern District of California, sitting by designation.

1. The state contends that Campbell is procedurally barred from attacking the prosecutor's comments, the admissibility of the prior conviction, and at least one theory that Washington's capital punishment statute is unconstitutional. The state argues that Campbell failed to raise these arguments before the Washington Supreme Court on direct appeal. *See Wainwright v. Sykes,* 433 U.S. 72, 86–87, 97 S.Ct. 2497, 2506–07, 53 L.Ed.2d 594 (1977) (state procedural default may bar federal habeas review absent a showing of cause and prejudice). The record shows, however, that Campbell did present these issues to the Washington Supreme Court by way of a motion for stay of execution. The Washington Supreme Court's order denying Campbell's motion for stay of execution appears to be a deci-

## FACTS AND PROCEEDINGS BELOW

The facts of this case are set forth in detail in *State v. Campbell*, 103 Wash.2d 1, 691 P.2d 929, 933 (1984), *cert. denied*, 471 U.S. 1094, 105 S.Ct. 2169, 85 L.Ed.2d 526 (1985), and are only briefly summarized here.

In 1974 Campbell assaulted Renae Wicklund in her home in Clearview, Washington. During the assault, Campbell forced Renae to submit to acts of sodomy by holding a knife to the throat of her one-year-old daughter, Shannah. Renae sought help after the attack from a neighbor, Barbara Hendrickson. After a 1976 trial at which both women testified against him, Campbell was convicted of first degree assault and sodomy and sent to prison.

In March 1982 Campbell was transferred to a work release facility in Everett, Washington. On April 14, 1982 Campbell returned to the home of Renae Wicklund in Clearview. There he beat Renae severely, strangled her, and slashed her throat. He then cut the throats of Shannah Wicklund, then eight years old, and Barbara Hendrickson, who, by a tragic twist of fate, was visiting Renae and Shannah that afternoon. All three victims bled to death.

Campbell was arrested a few days after the homicides and charged with three counts of aggravated first degree murder. Pursuant to Washington law, the prosecutor filed a written notice of intent to seek the death penalty.[2] After a trial in which the state's case was "overwhelmingly strong," *Campbell*, 691 P.2d at 933, Campbell was convicted on all three counts. The jury found four aggravating factors:[3] (1) Campbell was serving a term of imprisonment at the time of the murders; (2) the murders of two of the victims were related to their testimony against Campbell in his earlier trial for assault and sodomy; (3) Campbell murdered Shannah and Barbara to protect or conceal his identity; and (4) the murders were committed in the course of a burglary in the first degree. *Campbell*, 691 P.2d at 937.

Following the guilt phase of the trial, a special sentencing proceeding was held pursuant to Wash.Rev.Code § 10.95.050 (Supp. 1987). The jury found beyond a reasonable doubt that there were not sufficient mitigating circumstances to merit leniency. *See* Wash.Rev.Code § 10.95.030(2). As required by Wash.Rev.Code § 10.95.030(2) the trial judge sentenced Campbell to death. The Washington Supreme Court affirmed the convictions and sentence. *Campbell*, 691 P.2d at 948. Certiorari was denied. 471 U.S. 1094, 105 S.Ct. 2169, 85 L.Ed.2d 526 (1985).

---

sion on the merits. Since we reach these issues presented by Campbell, we need not address Campbell's argument that the state waived its procedural bar argument by failing to appeal or cross appeal the District Court rulings.

We decline to reach, however, Campbell's argument made for the first time at oral argument that the prosecutor allegedly improperly commented on Campbell's failure to present evidence at the penalty phase of the trial. The record in this case indicates that Campbell did not object to the comments at trial. More important, nothing in the record shows that he previously presented his argument to any court, state or federal. Under such circumstances we will not consider his contention raised for the first time at oral argument. *See Ross v. Hopper*, 716 F.2d 1528, 1535 (11th Cir.1983) (on habeas review of a death penalty, court declines to consider an issue raised for the first time on appeal); *Spivey v. Zant*, 661 F.2d 464, 477 (5th Cir.1981) (same).

2. Wash.Rev.Code § 10.95.040 provides:

(1) If a person is charged with aggravated first degree murder ..., the prosecuting attorney shall file written notice of a special sentencing proceeding to determine whether or not the death penalty should be imposed when there is reason to believe that there are not sufficient mitigating circumstances to merit leniency.

(2) The notice of special sentencing proceeding shall be filed and served on the defendant or the defendant's attorney within thirty days after the defendant's arraignment upon the charge of aggravated first degree murder....

(3) If a notice of special sentencing proceeding is not filed and served as provided in this section, the prosecuting attorney may not request the death penalty.

3. Under the Washington capital sentencing scheme, the jury considers aggravating factors at the guilt phase of the trial rather than at the penalty phase. The death penalty may be imposed only for aggravated first degree murder, which requires proof at the guilt phase of all the elements of first degree murder and one or more enumerated aggravating circumstances. Wash.Rev.Code § 10.95.020.

Two weeks prior to the scheduled execution date, Campbell, through court-appointed counsel, filed with the Washington Supreme Court a motion to stay the execution. The court treated the motion as a personal restraint petition and denied the petition. Campbell then filed a petition for writ of habeas corpus and a motion for stay of execution with the federal district court. In two separate orders, the district court denied Campbell's petition for writ of habeas corpus. Campbell timely appeals. A stay of execution has been granted pending appeal.

## STANDARD OF REVIEW

■ A district court's decision on a petition for writ of habeas corpus is reviewed de novo. *Chatman v. Marquez*, 754 F.2d 1531, 1533–34 (9th Cir.), *cert. denied*, 474 U.S. 841, 106 S.Ct. 124, 88 L.Ed.2d 101 (1985).

## DISCUSSION

### A. Prosecutor's Closing Argument

Campbell argues that the prosecutor's penalty phase closing argument was improper because it appealed to the passion and prejudice of the jury. He contends that the prosecutor's reference to (1) the potential harm to other persons in prison; (2) the potential harm to trial witnesses; (3) the theory of "societal self-defense"; and (4) the jury's limited responsibility "to answer one sole question" rather than "to debate the death penalty," rendered the jury's verdict unconstitutional.

We agree that "[i]t is of vital importance to the defendant and to the community that any decision to impose the death sentence be, and appear to be, based on reason rather than caprice or emotion." *Gardner v. Florida*, 430 U.S. 349, 358, 97 S.Ct. 1197, 1204, 51 L.Ed.2d 393 (1977). Every argument which stirs the emotions of the jury, however, does not render a sentencing proceeding unconstitutional. The Supreme Court has expressly approved the use of "open and far-ranging argument" during a capital sentencing proceeding. *See Gregg v. Georgia*, 428 U.S. 153, 203, 96 S.Ct. 2909,

2939, 49 L.Ed.2d 859 (1976). "We think it desirable for the jury to have as much information before it as possible when it makes the sentencing decision." *Id.* at 204, 96 S.Ct. at 2939. What is important is a "focus on the particularized circumstances of the crime and the defendant." *Id.* at 199, 96 S.Ct. at 2937; *see also Zant v. Stephens*, 462 U.S. 862, 879, 103 S.Ct. 2733, 2744, 77 L.Ed.2d 235 (1983); *Roberts v. Louisiana*, 428 U.S. 325, 333, 96 S.Ct. 3001, 3006, 49 L.Ed.2d 974 (1976).

Mere improper argument does not necessarily violate a defendant's constitutional rights. *See Caldwell v. Mississippi*, 472 U.S. 320, 328, 105 S.Ct. 2633, 2639, 86 L.Ed.2d 231 (1985) (Supreme Court cases "clearly warn against holding every improper and unfair argument of a state prosecutor to be a federal due process violation"). An "examination of the entire proceedings" must be made to determine whether the prosecutor's remarks rendered the proceedings "fundamentally unfair." *Donnelly v. DeChristoforo*, 416 U.S. 637, 645, 94 S.Ct. 1868, 1872, 40 L.Ed.2d 431 (1974); *see also Caldwell*, 472 U.S. at 339–40, 105 S.Ct. at 2645.

#### 1. Potential Harm to Other Persons in Prison

During closing argument in the sentencing proceeding, the prosecutor stated:

Mr. Campbell's past conduct in this case, carrying a grudge for having victimized a woman, an innocent woman, of sodomy and assault in 1974, carrying that grudge until 1982 and then brutally and savagely killing her—Certainly Mr. Campbell, if he gets life in prison without parole, maybe he will never be out again but suppose he gets angry at a fellow prisoner? How long will he carry a grudge there? Will he get back at them? How about prison guards? The help in prison? A cook? Someone who is not a prison guard. How about those people?

■ The prosecutor's argument in this instance was permissible because it was related to the future dangerousness of this particular defendant. The Supreme Court

has consistently held that the future dangerousness of a defendant is a proper consideration for the jury in a capital sentencing proceeding. *Caldwell,* 472 U.S. at 335, 105 S.Ct. at 2642–43; *Jurek v. Texas,* 428 U.S. 262, 274–76, 96 S.Ct. 2950, 2957–58, 49 L.Ed.2d 929 (1976). Such consideration is consistent with "the kind of individualized focus required in capital sentencing decisions." *California v. Ramos,* 463 U.S. 992, 1005–06, 103 S.Ct. 3446, 3455–56, 77 L.Ed.2d 1171 (1983). We agree with the district court that

> the evidence provided a logical basis for the concerns [the prosecutor] raised [in his closing argument to the jury]. The evidence supported the conclusion that Campbell committed the murders in retaliation for testimony approximately six years earlier. The suggested danger to others with whom Campbell might have contact in the future was therefore directly related to his character and record.

Campbell nevertheless argues that the jury's consideration of "any relevant factors" under Wash.Rev.Code § 10.95.070 is restricted to mitigating factors only. That section provides in part that a jury may consider "[w]hether there is a likelihood that the defendant will pose a danger to others in the future." Wash.Rev.Code § 10.95.070(8). The state trial court included section 10.95.070 in its instructions to the jury made prior to closing argument, and the prosecutor tailored his closing argument to those instructions. Campbell does not contend that the court's instructions were improper.

Campbell argues that because the defendant's future dangerousness is an aggravating factor rather than a mitigating factor, any argument regarding that issue was improper. He contends that *State v. Bartholomew,* 101 Wash.2d 631, 683 P.2d 1079, 1088 (1984), held that section 10.95.-070 must be construed to allow jury consideration of only mitigating factors. In *Bartholomew,* the court stated that

> the jury's liberal mandate under RCW 10.95.070 to consider "any relevant factors" shall be limited to mitigating factors only.... Specifically, evidence

of nonstatutory aggravating factors must be limited to defendant's criminal record, evidence that would have been admissible at the guilt phase, and evidence to rebut matters raised in mitigation by the defendant.

*Id.* 683 P.2d at 1086–87.

We disagree with Campbell's characterization of *Bartholomew.* Nothing in *Bartholomew* suggests that the court intended to place restrictions on the consideration of dangerousness. On the contrary, *Bartholomew* approved the trial court's reading of section 10.95.070(8):

> The court also read the jury the list of relevant factors for consideration provided in RCW 10.95.070. The jury may have found helpful a definition of "mitigating circumstances." However, we conclude that these instructions adequately guided the jury as to the nature and function of mitigating circumstances.

*Id.* at 1089.

■ In *Campbell,* with *Bartholomew* as its guide, the court concluded that reference in the jury instructions to the future dangerousness of the defendant does not introduce a "nonstatutory aggravating factor" into the proceedings:

> Defendant argues that by delineating eight possible mitigating factors, which the defendant has not raised, the court has in fact introduced prejudicial nonstatutory aggravating factors....
>
> We recently held that the trial court's reading of the relevant factors provided in RCW 10.95.070 "adequately guided the jury as to the nature and function of mitigating circumstances." *State v. Bartholomew,* 101 Wash.2d 631, 647, 683 P.2d 1079 (1984). *See also [State v.] Rupe,* 101 Wash.2d [664] at 701, 709–710, 683 P.2d 571 [1984]. As in *Bartholomew,* the trial court's recitation of the eight factors merely served as an illustration to the jury of the information it might consider in determining mitigating circumstances. Instruction 7 advised the jury that it "may consider any relevant factors" and that consideration was "not limited" to the eight enumerated factors. We see

nothing in the instruction that imposed additional aggravating factors.... The statutory standard for mitigation gives proper guidance to the jury....

*Campbell*, 691 P.2d at 944.

We therefore conclude that the prosecutor's argument addressing the issue of dangerousness did not transgress federal constitutional standards.[4]

### 2. Potential Harm to Trial Witnesses

In rebuttal argument, the prosecutor asked the jury "[w]hich of these witnesses that testified, if they thought that members ... of this jury would not protect them, would have ever taken this stand and testified?" Campbell's attorney immediately objected on the ground that it was not proper rebuttal. The trial judge sustained the objection, and the prosecuting attorney moved on to another line of argument. Campbell asserts that the prosecutor's statement improperly suggested to the jury the possibility of Campbell's escape from prison if he were not executed.

■ We agree that the prosecutor's statement did at least suggest the possibility of escape. Because the likelihood of Campbell's future contact with trial witnesses, if he were to be sentenced to life imprisonment without parole, is remote compared to the contact he inevitably would have with fellow prisoners and prison employees, the link between this argument and Campbell's future dangerousness is far more attenuated than that of the previous argument. Moreover, the comment violated at least the spirit of the trial judge's preargument order not to discuss the possibility of escape in argument.

We do not find, however, that the argument was constitutionally improper, particularly in light of Campbell's conduct in the past—that is, the killing of two of the victims because of their prior testimony against him. This argument is analogous to the instruction given in *Ramos*, but is even more "individualized." In *Ramos* the Supreme Court approved the use of an instruction to inform the jury of the governor's power to commute a sentence of life imprisonment without possibility of parole to a lesser sentence under which parole was a possibility. *Ramos*, 463 U.S. at 1005, 103 S.Ct. at 3456. In upholding the instruction, the Court stated:

> [A]s a functional matter the [i]nstruction focuses the jury's attention on whether this particular defendant is one whose possible return to society is desirable. In this sense, then, the jury's deliberation is individualized. The instruction invites the jury to predict not so much what some future Governor might do, but more what the defendant himself might do if released into society.

*Id.; see also Brooks v. Kemp*, 762 F.2d 1383, 1411–12 (11th Cir.1985) (en banc) (holding arguments regarding possibility of escape proper because they were "arguments about Brooks' future dangerousness [which] were appropriate inferences from the record before the jury"), *vacated and*

---

4. Furthermore, we also conclude that the remarks of the prosecutor do not rise to the level of rendering Campbell's sentencing proceeding "fundamentally unfair." Campbell's reliance on *People v. Holman*, 103 Ill.2d 133, 82 Ill.Dec. 585, 469 N.E.2d 119 (1984), *cert. denied*, 469 U.S. 1220, 105 S.Ct. 1204, 84 L.Ed.2d 347 (1985), and *Hance v. Zant*, 696 F.2d 940 (11th Cir.), *cert. denied*, 463 U.S. 1210, 103 S.Ct. 3544, 77 L.Ed.2d 1393 (1983), is misplaced. In both cases death sentences were reversed on the ground of prosecutorial misconduct in closing argument. It is readily apparent, however, that those cases involved far more egregious prosecutorial misconduct than is allegedly involved here. *See Holman*, 469 N.E.2d at 133 (prosecutor stating that if the jury chose not to impose the death penalty it would be "guaranteeing down the road future innocent victims will be slaughtered"); *Hance*,

696 F.2d at 951–52 (involving an extended and inflammatory "appeal to gut emotion").

In *Brooks v. Kemp*, 762 F.2d 1383 (11th Cir. 1985) (en banc), *vacated and remanded on other grounds*, —— U.S. ——, 106 S.Ct. 3325, 92 L.Ed.2d 732 (1986), and *Tucker v. Kemp*, 762 F.2d 1496, 1504 (11th Cir.1985) (en banc), *cert. denied*, —— U.S. ——, 106 S.Ct. 3340, 92 L.Ed.2d 743 (1986), the Eleventh Circuit upheld death sentences in the face of claims of prosecutorial misconduct in closing argument. Both arguments included comments regarding the threat of death to prison officials, together with many other inflammatory remarks. *See Brooks*, 762 F.2d at 1394–98; *Tucker*, 762 F.2d at 1505–08. The prosecutor's argument in Campbell's sentencing proceeding pales in comparison to the arguments upheld in those cases.

*remanded on other grounds,* — U.S. —, 106 S.Ct. 3325, 92 L.Ed.2d 732 (1986).

### 3. Societal Self-Defense

The prosecutor made the following argument during the sentencing proceeding:

> This is the sort of case—I like to call it society's right of self-defense in this case. Mr. Campbell, by his actions, has declared war on society. Society should not have to put up and cannot put up with what he has done and what he did to those three people, what he may do to anyone else in the future that crosses him.
>
> You members of the jury are in effect the conscience of the community. You have heard all of the evidence in this case. You've heard everything you can and will hear about Mr. Campbell's background and now it is up to you to make a decision. Can society—should society tolerate this? We urge you to say, "No, society should not tolerate this," that there are not sufficient mitigating circumstances to merit leniency.

Campbell contends that this argument "misle[d] the jury with an inappropriate analogy to the doctrine of self-defense." *See People v. Holman,* 103 Ill.2d 133, 82 Ill. Dec. 585, 602, 469 N.E.2d 119, 136 (1984), *cert. denied,* 469 U.S. 1220, 105 S.Ct. 1204, 84 L.Ed.2d 347 (1985) (prosecutor improperly argued that the jury may impose the death penalty just as an individual may use deadly force against a person who threatens bodily harm to individual or family member).

■ Here, the prosecutor's argument again relates, at least indirectly, to the future dangerousness of the defendant. Furthermore, when the entire sentencing proceeding is reviewed, it cannot be contended that the argument rendered the proceeding fundamentally unfair. This is particularly true in light of the fact that Campbell's own attorney, during his argument to the jury, concurred in the "self-defense" argument:

> There are certain things that [the prosecutor] said that I have to agree with. Given the fact that you found Mr. Campbell guilty, society has to protect itself.

> That doesn't mean the man has to be put to death. But I grant him that much, that we cannot have people who commit these kind of crimes running around loose among us ever again.

*See Lockett v. Ohio,* 438 U.S. 586, 595, 98 S.Ct. 2954, 2959–60, 57 L.Ed.2d 973 (1978) (prosecutor's arguments not unconstitutional in light of defendant's own counsel's remarks along same line).

### 4. Jury's Limited Responsibility

In response to the closing argument of Campbell's counsel to the sentencing jury—an argument grounded primarily on notions of humanity, moral conscience, mercy and forgiveness, and "Christian teachings"—the prosecutor began his rebuttal argument with the following statement:

> Ladies and Gentlemen of the Jury, the Court did not instruct you to debate the death penalty, whether it is proper or improper in this case. The Court instructed you that you are to answer one sole question. Are there or are there not sufficient mitigating circumstances to merit leniency?

Campbell contends that this argument runs afoul of the principles set forth in *Caldwell,* 472 U.S. at 323, 105 S.Ct. at 2636–37. There, the Court reversed a death sentence on the ground that the prosecutor "urged the jury not to view itself as determining whether the defendant would die, because a death sentence would be reviewed for correctness by the State Supreme Court." *Id.* The Court stated that arguments regarding automatic appellate review of a death sentence "minimize[d] the jury's sense of [its 'truly awesome'] responsibility for determining the appropriateness of death." *Id.* at 341, 105 S.Ct. at 2646. Such argument, therefore, "does not meet the standard of reliability that the Eighth Amendment requires." *Id.*

■ We agree with the district court that Campbell's contention is without merit. The prosecutor's remark regarding the jury's duty not to "debate the death penalty" can be construed only as a general comment on the validity of the death penal-

ty per se. It was therefore proper rebuttal. The comment regarding the jury's responsibility "to answer one sole question" was "both accurate and relevant to a legitimate state penological interest." *Id.* at 335, 105 S.Ct. at 2643. The argument properly focused the jury's attention on its charge to decide whether there were sufficient mitigating circumstances to merit leniency.

■ Moreover, Campbell can show no prejudice from the prosecutor's argument. The court clearly instructed the jury on its proper role. At the outset of the sentencing proceeding, the trial court instructed the jury:

> If the jury unanimously finds that there are not sufficient mitigating circumstances to merit leniency, the Court shall sentence the defendant to death. The Court may not suspend or defer the execution or imposition of that sentence.

The court repeated that instruction in its formal instructions to the jury prior to argument of counsel. In his argument to the jury, the prosecutor stated:

> [T]he Court has instructed you that the result of an affirmative answer, a unanimous affirmative answer to that question, is that the Court must impose the death sentence upon the defendant. So I will not try and dance around that question because that will be the result. And we are asking that you answer that question unanimously in an affirmative fashion.

The thrust of the defendant's entire argument to the jury was on the jury's choice between life or death. The jury was well aware of its "awesome responsibility" for deciding Campbell's fate. Clearly, the fleeting remark Campbell objects to had no effect on the jury's sentencing decision. *See Caldwell,* 472 U.S. at 341, 105 S.Ct. at 2646.

**B. Admission of Burglary Conviction**

During the sentencing proceeding, the state introduced evidence that Campbell had been convicted of two prior felonies. The first conviction was for the assault and sodomy of Renae Wicklund in 1974 and is not challenged here. The other was a 1976 conviction for second degree burglary entered on Campbell's plea of guilty. Campbell argues that evidence of this latter conviction should not have been admitted because the conviction was based on an invalid guilty plea.

"It is ... well-established that a sentence is subject to review if it has been enhanced in reliance on an unconstitutional conviction." *United States v. Williams,* 782 F.2d 1462, 1466 (9th Cir.1986) (citing *United States v. Tucker,* 404 U.S. 443, 447, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (1972)). To prevail on his claim Campbell must show that (1) the prior conviction was unconstitutional and (2) his sentence was enhanced in reliance on the prior conviction. *See Williams,* 782 F.2d at 1466.

■ We need not address the first prong of this test because Campbell fails to satisfy the second prong. He has not shown that his sentence was enhanced by the jury's reliance on the prior conviction. *See Farrow v. United States,* 580 F.2d 1339, 1354 (9th Cir.1978) (en banc) (recommending determination of enhancement question prior to addressing constitutionality issue). The underlying facts of this case speak for themselves. The jurors were not only confronted with the sheer savagery of the murders, but they, like the Supreme Court of Washington, must have been "hard pressed to find killings more premeditated and revengeful than those committed by defendant." *Campbell,* 691 P.2d at 946. The state focused on the facts of Campbell's crime in its case before the jury and only briefly presented the nonviolent second degree burglary conviction in the sentencing proceeding. In a case unprecedented in the state of Washington with respect to the number of aggravating factors found by the jury, *see id.* at 945, there is no reasonable probability that the jury relied on the 1976 burglary conviction in determining whether there were sufficient mitigating circumstances to merit leniency. *See Farrow,* 580 F.2d at 1355 (adopting "reasonable probability" standard).

## C. Effective Assistance of Counsel

Campbell contends that he was denied effective assistance of counsel by his attorneys' failure to present mitigating evidence during the sentencing proceeding. The appropriate standards for judging Campbell's claim are set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a ... death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the ... death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Id.* at 687, 104 S.Ct. at 2064. In reviewing alleged deficiencies of representation, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689, 104 S.Ct. at 2065. To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. at 2068.

### 1. Deficiency of Counsel

■ The record amply supports the district court's finding that the decision of Campbell's counsel not to present mitigating evidence at the sentencing proceeding was a reasoned strategic choice falling well within "the wide range of professionally competent assistance." *Id.* at 690, 104 S.Ct. at 2066. One reason for the decision not to present mitigating evidence was to avoid "opening the door" to possible damaging rebuttal evidence by the state. The record shows that the state was prepared to present a vast array of aggravating evidence in rebuttal, including the forcible rape of Campbell's ex-wife, repeated rape and intimidation of fellow inmates, drug- and alcohol-induced violence, and the report of a psychologist that Campbell was "imminently harmful to all who directly or indirectly capture his attention or interest." In addition, there were "reportings of sexually abhorrent conduct with animals, stranglings of animals, [and] alleged child abuse." As one of Campbell's attorneys testified, "[t]here pretty much was every kind of bad thing you could imagine [that] had been represented as potential aggravating testimony to be presented by the State."

In addition, Campbell's counsel correctly interpreted *Bartholomew*'s restriction on the state's ability to present aggravating evidence. Faced with the choice of limiting the state to a relatively tame presentation of Campbell's prior convictions, or potentially opening the door to devastating rebuttal evidence, Campbell's counsel chose the former route by electing not to present mitigating evidence. In one of the attorney's words, "[p]resentation of those [mitigating] items in my mind would bring forth a parade of horribles that in my opinion would so far bury those factors in mitigation that any chance we had of saving his life would have been lost."[5]

■ Campbell also faults his attorneys for not filing motions in limine to deter-

---

5. Campbell also argues that his attorneys should not have accepted his decision not to present mitigating evidence at the sentencing proceeding. One attorney testifed that Campbell's wish not to have any mitigating evidence presented was a "determinative factor." We need not decide, however, whether a decision not to present mitigating evidence which is based solely on the client's wishes is unconstitutional. The record here is clear that the decision to forgo presentation of mitigating evidence was a joint decision ultimately based on legitimate strategic considerations. To accord deference to Campbell's desires when they coincided with those strategic considerations certainly was not improper.

mine exactly what evidence the state would be able to present in rebuttal. We recognize, however, that "counsel is strongly presumed to have ... made all significant decisions in the exercise of reasonable professional judgment," *Strickland*, 466 U.S. at 690, 104 S.Ct. at 2066. The record shows that Campbell's lead counsel was very experienced—a veteran of hundreds of felony trials, including many first-degree murder cases—and was specifically engaged as co-counsel because of his past capital experience. Counsel testified that he did not file any motions in limine because, based on his education and experience, he "had a splendid idea of what was going to be allowed." We respect that professional judgment.

Campbell next argues that counsel were ineffective because they did not thoroughly investigate all possible avenues which may have led to mitigating evidence. *See Strickland*, 466 U.S. at 690–91, 104 S.Ct. at 2066 (counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary). The record indicates, however, that Campbell's attorneys conducted a reasonable investigation.[6] *See Burger v. Kemp*, —— U.S. ——, 107 S.Ct. 3114, 3116, 97 L.Ed.2d 638 (1987) (decision not to mount an all-out investigation into petitioner's background was supported by reasonable professional judgment); *Woratzeck v. Ricketts*, 820 F.2d 1450, 1456–57 (9th Cir.1987) (counsel conducted sufficient inquiry into mitigating value of potential witness' testimony), *amended*, (9th Cir. Sept. 1, 1987). Counsel were well aware of the potential mitigating factors which may have been introduced at the sentencing proceedings: Campbell's father was an alcoholic; Campbell was the victim of child abuse; he suffered from various medical problems as a young child; he had a history of drug and alcohol abuse; he had reportedly attempted suicide on one occasion; he had requested a transfer from the Everett Work

Release Facility because he did not want to be near Renae Wicklund; and he was the father of two children.

 Campbell does not suggest any potential mitigating evidence that could have been uncovered through a more thorough investigation. He does criticize his attorneys, however, for failing to interview his family and childhood friends, classmates, and teachers. Nevertheless, Campbell specifically requested his attorneys not to contact members of his family. The client's wishes are not to be ignored entirely. "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant." *Strickland*, 466 U.S. at 691, 104 S.Ct. at 2066. Moreover, Campbell's wishes were again consistent with the professional judgment of his attorneys that such interviews were unnecessary and would not have made any difference in the context of this case. One counsel testified:

> It is my conclusion, after reading all of the files and talking with Mr. Campbell and going through the case, that Mr. Campbell's activities in prison were such that anything presented about his childhood was not going to make any difference. The one hope that I had in trying to save his life was that there was no evidence before the Jury that he had misconducted himself in prison. And what I hoped—obviously it didn't work out—but what I hoped was that the Jury might spare his life because there was no evidence that he was not a model prisoner in a controlled environment.

Here, "counsel's decision not to mount an all-out investigation into [Campbell's] background in search of mitigating circumstances was supported by reasonable professional judgment." *Burger*, 107 S.Ct. at 3126.

---

**6.** Counsel reviewed voluminous records from the state department of corrections and juvenile courts, files from Campbell's previous attorneys, and reports from an investigator who interviewed a number of persons who were familiar with Campbell, including a psychiatrist who had examined Campbell and various prison officials. In addition, counsel conducted many interviews with Campbell and interviewed one of Campbell's former prison cellmates.

■ Finally, Campbell asks this court to apply a per se rule requiring the presentation of mitigating evidence in the sentencing phase of a capital trial. Such a rule, however, would directly conflict with *Strickland.*

> In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances.... No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant. Any such set of rules would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions.

*Strickland,* 466 U.S. at 688–89, 104 S.Ct. at 2065. Moreover, the Supreme Court has implicitly rejected Campbell's position by its decisions holding no constitutional error despite counsel's failure to present any mitigating evidence. *See, e.g., Burger,* 107 S.Ct. at 3126; *Darden v. Wainwright,* 477 U.S. 187, 106 S.Ct. 2464, 2474, 91 L.Ed.2d 144 (1986).

We conclude that considering the particular circumstances of this case, including Washington's rule of law limiting the evidence the state may present at the sentencing proceeding, the decisions of Campbell's counsel regarding mitigating evidence meet the standard for professionally competent assistance set forth in *Strickland.*

### 2. Prejudice

■ Even if we were to conclude that Campbell's counsel did not meet the *Strickland* competency standard, we additionally "must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors." *Strickland,* 466 U.S. at 696, 104 S.Ct. at 2069. Campbell cannot meet this burden. He concedes that some of his potential mitigating evidence would have been met with strong rebuttal evidence from the state, but he speculates that evidence of his "background, childhood and family relationships," and possibly evidence of his "child abuse, upbringing and drug abuse," could have been presented without opening the door to rebuttal evidence. Even if this is the case, we agree with the district court that "given the overwhelming aggravat[ing] factors," and "the heinous nature of the crime," there is no reasonable likelihood that the jury's verdict would have been different had the mitigating evidence been introduced.

### D. Constitutionality of Washington's Capital Punishment Statute

Campbell argues that Washington's capital punishment statute is facially unconstitutional because it (1) fails to adequately channel and guide jury sentencing discretion; (2) vests unbridled discretion in the prosecutor to decide when to seek the death penalty; and (3) creates a mandatory presumption in favor of the death penalty that a defendant must overcome.

### 1. Adequate Guidelines to Jury

■ Campbell contends that the Washington Supreme Court improperly "modified" Washington's capital punishment statute by declaring that a jury's liberal mandate under section 10.95.070 to consider "any relevant factors" in making its sentencing determination is limited to mitigating factors. *See Bartholomew,* 683 P.2d at 1086–87. He argues that only the legislature can supply the necessary guidelines and that a court cannot constitutionally "cure" a defective statute.

Campbell's contention is meritless. The Supreme Court has often relied upon state judicial constructions of death penalty statutes in reviewing such statutes for constitutionality. In *Gregg,* 428 U.S. at 202, 96 S.Ct. at 2938–39, the petitioner objected to the vagueness of a particular aggravating factor. In upholding the statutory provision, the Court stated that "[w]hile such a phrase might be susceptible of an overly broad interpretation, the Supreme Court of Georgia has not so construed it." *Id.* Similarly, *Proffitt v. Florida,* 428 U.S. 242,

254, 96 S.Ct. 2960, 2967, 49 L.Ed.2d 913 (1976), involved a challenge to the vagueness of statutory aggravating and mitigating circumstances. The Court stated that "[t]hese provisions must be considered as they have been construed by the Supreme Court of Florida." *Id.* at 255, 96 S.Ct. at 2968. In *Jurek,* 428 U.S. at 272, 96 S.Ct. at 2956, the Court upheld a Texas statute because the state court had interpreted the statute broadly, despite its facial narrowness, to allow consideration of "whatever mitigating circumstances [the defendant] may be able to show." *See also Chaney v. Lewis,* 801 F.2d 1191, 1195 (9th Cir.1986) ("Although the statutory language is broad, ... the Arizona Supreme Court need not construe the statute open-endedly."), *cert. denied,* —— U.S. ——, 107 S.Ct. 1911, 95 L.Ed.2d 516 (1987).[7]

### 2. Prosecutorial Discretion

■ Campbell argues that Washington's capital punishment statute is unconstitutional because it vests unbridled discretion in the prosecutor to decide when to seek the death penalty. That argument has been explicitly rejected by the Supreme Court. *See Gregg,* 428 U.S. at 199, 96 S.Ct. at 2937; *Proffitt,* 428 U.S. at 254, 96 S.Ct. at 2967; *Jurek,* 428 U.S. at 274, 96 S.Ct. at 2957. As Justice White stated in his concurring opinion in *Gregg,* "[a]bsent facts to the contrary, it cannot be assumed that prosecutors will be motivated in their charging decisions by factors other than the strength of their case and the likelihood that a jury would impose the death penalty if it convicts." 428 U.S. at 225, 96 S.Ct. at 2949 (White, J., concurring).

Nothing in the Washington statute makes Justice White's observation any less applicable here. A Washington prosecutor may not seek the death penalty unless he or she has "reason to believe that there are not sufficient mitigating circumstances to merit leniency." Wash.Rev.Code § 10.95.-040(1); *Campbell,* 691 P.2d at 943. Campbell's contention that the statute guides and restrains the prosecutor in decisions not to seek the death penalty, but not in decisions to seek the death penalty, is, as the state asserts, "semantical at best." The same is true of Campbell's attempt to distinguish *Gregg, Proffitt,* and *Jurek.* For purposes of prosecutorial discretion, the practical effect of the various statutes is the same. *See, e.g., Jurek,* 428 U.S. at 270, 96 S.Ct. at 2955 (involving a statute like Washington's which requires proof of aggravating factor at guilt phase rather than penalty phase).

### 3. Mandatory Presumption/Burden on Defendant

■ Campbell argues the Washington capital punishment statute creates a mandatory presumption in favor of the death penalty and places the burden on the defendant to prove there are sufficient mitigating circumstances to merit leniency. The language of the statute and the construction placed on the statute by the Washington Supreme Court belie these contentions. Under the Washington scheme, a death sentence may be imposed only for aggravated first degree murder, after the jury finds a statutory aggravating circumstance beyond a reasonable doubt at the guilt phase of the trial. Wash.Rev.Code §§ 10.95.020–.030. At the penalty phase, the jury is required to deliberate on the following question: "Having in mind the crime of which the defendant has been found guilty, are you *convinced beyond a reasonable doubt* that there are not suffi-

---

7. Our decision in *United States v. Harper,* 729 F.2d 1216 (9th Cir.1984), is distinguishable. There we struck down the death penalty provision of the federal espionage statute because it provided no statutory guidelines to control the sentencer's discretion in determining when to impose the death penalty. *Id.* at 1224–26. We concluded that the statute "cannot be saved by judicial formulation of the missing, but essential, statutory guidelines." *Id.* at 1226. But in that case, the district court read the statute as delegating to district courts as sentencers the authority to formulate and apply guidelines on an ad hoc basis. *Id.* at 1219. Moreover, the *Harper* statute provided no guidance to the sentencing authority at all, while the Washington capital punishment statute has several provisions limiting and guiding the discretion of the jury. *See* Wash.Rev.Stat. §§ 10.95.020 (aggravating factors), 10.95.060 (instructions to jury and ultimate question to be answered), 10.95.-070 (sentencing factors).

cient mitigating circumstances to merit leniency?" Wash.Rev.Code § 10.95.060(4) (emphasis added). Evidence from the guilt phase carries over to the penalty phase. Wash.Rev.Code § 10.95.060(3); *Campbell,* 691 P.2d at 951 (Rosellini, J., concurring).

The language of the statute clearly indicates that the burden of proof is on the state to "convince" the jury beyond a reasonable doubt that there are not sufficient mitigating circumstances to merit leniency. Wash.Rev.Code § 10.95.060(4). Campbell's apparent contention that "convince" does not mean the same thing as "prove" has been rejected by the Washington Supreme Court. *See State v. Mak,* 105 Wash.2d 692, 718 P.2d 407, 444 (construing section 10.95.-060(4) to place the burden of proof on the state, and suggesting that an instruction expressing the state's burden in terms of "proving" rather than "convincing" may be more appropriate), *cert. denied,* —— U.S. ——, 107 S.Ct. 599, 93 L.Ed.2d 599 (1986); *see also State v. Rupe,* 101 Wash.2d 664, 683 P.2d 571, 593 (1984) (rejecting similar burden of proof argument). Moreover, the trial judge specifically instructed the jury at Campbell's sentencing proceeding that the state had the burden of proof:

> During these special sentencing proceedings, the State bears the burden of proving beyond a reasonable doubt that there are not sufficient mitigating circumstances to merit leniency.

> The law of this state presumes that a defendant enters the special sentencing meriting leniency, that is a sentence of life in prison without possibility of parole. This presumption continues throughout the entire proceeding unless you find it has been overcome by the evidence beyond a reasonable doubt.

As the instruction indicates, the state's burden of proof carries with it a presumption of leniency, a presumption which the state can overcome only by showing beyond a reasonable doubt that there are not sufficient mitigating circumstances to merit leniency. Campbell contends instead that the statute creates a mandatory presumption in favor of the death penalty (and a corresponding burden on the defendant

to produce evidence of mitigating circumstances) because the statute "compels the jury to return a verdict of death" whenever the defendant fails to present any mitigating evidence at the sentencing proceeding. This argument ignores the fact that the sentencing jury has before it all the evidence from the guilt phase, including whatever mitigating evidence may have been presented by the defendant at the guilt phase. The jury's decision is not based solely on what is presented at the sentencing proceeding. Moreover, even if the defendant never introduced any mitigating circumstances at either phase of the trial, the state still bears the burden of overcoming the presumption of leniency, and the jury is free to consider "any relevant [mitigating] factors" in making its sentencing determination. *Bartholomew,* 683 P.2d at 1086–87.

Campbell's reliance on *Mak,* 718 P.2d at 444, is misplaced. That case simply states that there is no constitutional right to a presumption of leniency. It does not hold that there is no presumption of leniency created by the Washington statute. On the contrary, *Mak* says explicitly that the state bears the burden of proof on the issue. *Id.* That burden of proof necessarily carries with it a presumption in favor of the defendant.

Consistent with *Lockett,* 438 U.S. at 602–08, 98 S.Ct. at 2963–67, the Washington statute imposes no limits on the mitigating evidence a capital defendant may introduce at a sentencing proceeding, subject, of course, to minimal standards of probative value and relevance. *Bartholomew,* 683 P.2d at 1088. The statute also imposes upon the state the burden of proof at such a proceeding. The defendant cannot manufacture a "presumption of death" simply because he chooses not to present mitigating evidence. The jury in Campbell's case was properly instructed on the state's burden of proof and the presumption of leniency in accordance with Washington law.

## CONCLUSION

We reject Campbell's arguments.[8] The judgment of the district court is affirmed in its entirety.

FLETCHER, Circuit Judge, dissenting:

I dissent because I am convinced that the failure of Campbell's counsel to present evidence of mitigating circumstances during the sentencing proceedings deprived Campbell of his right to effective assistance of counsel.

I do not quarrel with the majority's statement of the burden that Campbell must sustain under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), to prevail on a claim of ineffective assistance. *See ante* at 1464. Nor do I deny that in some cases failure to present mitigating evidence at sentencing can be a legitimate tactical decision rather than ineffective representation. *See Burger v. Kemp,* — U.S. —, 107 S.Ct. 3114, 3122–26, 97 L.Ed.2d 638 (1987). The majority, however, overlooks unique aspects of Washington law that made counsels' omission in this case a fatal one. Counsel, in effect, signed Campbell's death warrant.

## BACKGROUND

Washington's capital punishment statute requires a bifurcated proceeding when the death penalty is sought. Wash.Rev.Code §§ 10.95.050(1). In the guilt phase, the defendant must be convicted of "aggravated first degree murder," which is the commission of first degree murder, *id.* § 2.04.190, accompanied by one or more of ten specified aggravating circumstances. *Id.* § 10.95.020. The Washington statute differs from the statutes of most other states in that aggravating circumstances must be proved at the guilt phase rather than at the sentencing phase of the proceedings. *See*

*State v. Bartholomew,* 98 Wash.2d 173, 189, 654 P.2d 1170 (1982), *vacated and remanded,* 463 U.S. 1203, 103 S.Ct. 3530, 77 L.Ed.2d 1383 (1983), *on remand,* 101 Wash.2d 631, 683 P.2d 1079 (1984) (affirming 98 Wash.2d 173, 654 P.2d 1170).

In the sentencing phase, the jury is charged with answering a single convoluted question, to wit:

> Having in mind the crime of which the defendant has been found guilty, are you convinced beyond a reasonable doubt that there are not sufficient mitigating circumstances to merit leniency?

Wash.Rev.Code § 10.95.060(4). If the jury returns an affirmative answer to this question, the defendant must be sentenced to death; if not, the sentence must be life imprisonment. *Id.* § 10.95.080. If the jury is not unanimous in finding insufficient mitigating circumstances to warrant leniency, an affirmative answer may not be returned. *Id.* § 10.95.060(4).

Under Washington law, the admissible evidence at the sentencing phase is limited to (1) whatever evidence in mitigation the defense chooses to offer; (2) the defendant's criminal record; (3) evidence relevant to rebut the defendant's evidence in mitigation. The statute provides that "[i]n deciding [whether leniency is merited] ... the jury ... may consider any relevant factors including but not limited to" eight listed factors, which include, for example, the defendant's prior criminal activities and whether the defendant acted under the effect of an extreme mental disturbance. *Id.* § 10.95.070. However, just days before Campbell's sentencing hearing, the Washington Supreme Court substantially restricted the "relevant factors" that can be considered by Washington juries. *Bartho-*

---

**8.** Campbell lists an issue in his appellate brief concerning the effectiveness of counsel in his direct appeal in state court. He made no argument regarding this issue, however, in his briefs. In any event, the argument is meritless. Presumably Campbell's contention coincides with issues raised in his Amended Petition for Writ of Habeas Corpus relating to his attorneys' failure to raise certain issues on direct appeal. These issues were presented, however, to the state court in Campbell's subsequent personal

restraint petition. Because the state court disposed of these issues by denying the personal restraint petition, Campbell can show no prejudice from his attorneys' failure to raise the issues on direct appeal.

Campbell also complains that his due process rights were denied by our 75–page limitation of his appellate brief. Our review of the briefs indicates that this limitation did not infringe Campbell's constitutional rights.

*lomew,* 98 Wash.2d at 196–99, 654 P.2d 1170. The court held that "the jury's liberal mandate under RCW 10.95.070 to consider 'any relevant factors' shall be limited to mitigating factors only," and restricted aggravating evidence to defendant's criminal record and those factors relevant to rebut the defendant's mitigation evidence. *Id. Bartholomew* also imposes a balancing test before rebuttal evidence may be admitted:

> [T]he prosecution [is not] permitted to produce any evidence it cares to so long as it points to some element of rebuttal no matter how slight or incidental.... The court must balance the extent to which the evidence tends to rebut defendant's mitigating information against the extent to which the evidence is otherwise prejudicial to the defendant. Only if the rebuttal value ... outweighs the prejudicial effect should the evidence be admitted.

*Id.* at 198, 654 P.2d 1170.

In sum, Washington law places both a significant burden of proof and significant restraints on the prosecutor. In order to obtain the death penalty against Campbell, the prosecutor had to convince each juror beyond a reasonable doubt that there were not sufficient mitigating circumstances to warrant leniency. In doing so he was permitted to introduce only that aggravating evidence which related to Campbell's prior criminal record or which was both relevant as rebuttal to mitigation evidence and not unduly prejudicial.

The magistrate's report on Campbell's habeas petition describes what happened at Campbell's sentencing proceeding:

> The State introduced documentary evidence as to Campbell's two convictions in 1976. A deputy sheriff authenticated the Okanogan County documents. Campbell's counsel declined to cross-examine

the witness. The State then rested. Defense counsel moved for a directed verdict or to dismiss the sentencing proceedings, claiming the state had not presented a *prima facie* case. The trial judge denied the motion, holding that all the evidence from the "guilt phase" was also before the jury. Mr. Savage, one of the defense counsel, requested a recess, after which he advised the court: "Your honor, it is our proposal that in view of what we consider to be a proper legal position we will not be presenting any evidence on behalf of Mr. Campbell in our case in chief, feeling that the State has not proved a prima facie case and that we do not want to waive that position." ... The case proceeded to instructions, arguments, and a verdict imposing the death penalty.

Although the jury had been instructed to ignore argument unsupported by law or evidence, Campbell's counsels' only argument was an emotional appeal for mercy. The prosecution correctly pointed out that "absolutely no mitigating circumstance" had been shown.

Of course, if no mitigating circumstances capable of convincing a juror that Campbell merited leniency existed, his counsel's performance would have been unassailable. In fact, however, several circumstances traditionally deemed mitigating in this context did exist.[1] In the district court hearing on Campbell's habeas petition, one of his trial lawyers testified that he knew the following about Campbell: (1) his father was an alcoholic with a violent temper who had abandoned his family; (2) his mother had kicked him out of the house and had tried to have him committed; (3) he had been the victim of child abuse; (4) he had started using drugs intravenously at age 12 and had severe problems with both drugs and alcohol; (5) he had been diagnosed as, among other things, paranoid and

---

[1] *See generally* Goodpastar, *The Trial for Life: Effective Assistance of Counsel in Death Penalty Cases,* 58 N.Y.U.L.Rev. 299, 300–303 (comparing effective and ineffective assistance in specific death penalty proceedings); *id.* at 336 ("Counsel's demonstration that upbringing and other formative influences may have distorted the defendant's personality or led to his criminal behavior may spark in the sentencer the perspective or compassion conducive to mercy. Thus, effective assistance of counsel ... entails at a minimum the attempt to gather and present at least some evidence of the defendant's background which might serve to explain the defendant's crimes and elicit a compassionate response....").

manic depressive; and (6) he had asked, to no avail, not to placed in the Everett Work Release facility because it was near the home of Renae Wicklund and he feared that he might loose control and harm her. For the same reason, he requested a transfer after he was placed there.

## DISCUSSION

### 1. Competency

The district court held that counsels' decision not to present mitigating evidence was a strategic choice within the range of professionally competent assistance under *Strickland.* The court noted that under *Bartholomew,* if Campbell's counsel did not put on any mitigating evidence, the prosecution would be limited to introducing evidence of Campbell's criminal record. The court accepted counsels' conclusion "that they stood a much greater chance of persuading the jury to return a 'life' verdict if they could so limit the record, and avoid potentially devastating rebuttal testimony of Campbell's sordid record of violence." "This strategy," the district court concluded, "even under the scrutiny of hindsight, still seems eminently reasonable." With this I disagree.[2]

Defense counsels' strategy might have made sense if, in fact, Campbell's mitigating evidence would have allowed the state to introduce his sordid record. But defense counsel and the district court did not take account of *Bartholomew*'s requirement that rebuttal evidence be more than just slightly relevant and that the court balance its probativeness against its prejudicial impact.[1] *See* 98 Wash.2d at 198, 654 P.2d 1170. Several mitigating circumstances— in particular those relating to Campbell's formative years and his plea not to be placed in the vicinity of his eventual victims—would not have provided a basis for harmful rebuttal.[3] I find it incomprehensible that defense counsel made no motions *in limine* to test what rebuttal evidence the trial court would allow under *Bartholomew*'s restrictions. This approach would have been risk-free.

To understand why it was crucial to put forth evidence in mitigation, one only need read the question put to Campbell's jury. The members of the jury, who had been presented with *no* evidence of mitigating circumstances were asked, if they were "convinced beyond a reasonable doubt that there are not sufficient mitigating circumstances to merit leniency." In the total absence of mitigating evidence, there is only one answer to this question. Because the question focuses *solely* on the existence of mitigating circumstances, counsels' failure to offer anything upon which any juror could base a negative conclusion left the members of the jury—who we must presume acted in accordance with the law—with no options. Under the most indulgent standard, I find defense counsels' decision to forgo presenting evidence to the jury grossly unreasonable and constitution-

2. The district court also found that "the decision made by petitioner's trial counsel was a strategic one to preserve the argument, based in a good faith belief held by counsel, that the State had failed at that stage to present a *prima facie* case." While I do not doubt that defense counsels' belief was a good faith one, I do believe that it was legally unreasonable. The trial court held that all the evidence from the guilt phase was before the jury. This holding was clearly correct. The question put to the jury begins: "Having in mind the crime of which the defendant has been found guilty," Wash.Rev.Code § 10.95.060(4), and, under *Bartholomew*, "if the defendant produces no mitigating evidence, the prosecution should be limited to the factors *proved at the guilt phase* together with the defendant's criminal record." 98 Wash.2d at 197, 654 P.2d 1170 (emphasis added). The fact that trial counsel never subsequently challenged imposition of the death penalty based on the

State's failure to establish a *prima facie* case would be incomprehensible if the argument were a legally reasonable one. Thus, to the extent that counsels' failure to put on a case was premised on the theory that the prosecution had failed to establish its case, I would find the strategy unreasonable and representation based on it incompetent.

3. The majority notes that Campbell's lead counsel testified that, "based on his education and experience he 'had a splendid idea of what was going to be allowed'" in as rebuttal evidence. *Ante* at 1463. Campbell's sentencing proceeding was, however, the *first* to be conducted under the new strictures imposed by *Bartholomew.* I suggest counsel relied too much on past education and experience and too little on recent decisional law.

ally ineffective. Counsel had not made a thorough investigation of the law. *Strickland*, 466 U.S. at 689–91, 104 S.Ct. at 2065–66.[4]

### 2. Prejudice

I recognize that it is not enough that Campbell's counsel acted unreasonably. Counsels' omission must have been prejudicial to Campbell's defense. *Strickland*, 466 U.S. at 692, 104 S.Ct. at 2067. Campbell "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. at 2068. *Strickland* defines a reasonable probability as "a probability sufficient to undermine confidence in the outcome." *Id.* Here, Campbell must demonstrate that counsel's failure to offer any mitigating evidence undermines confidence in the outcome—imposition of the death penalty. He must show that there is a sufficient probability that at least one juror would have found the mitigating evidence sufficient to answer "no" to the question whether beyond a reasonable doubt there were insufficient mitigating circumstances to merit leniency.

No one can be sure of the outcome had the jury heard the evidence. "[T]he ultimate effect [of failure to present reasonably available mitigating evidence] on the sentencer's final decision is absolutely indeterminate and indeterminable." Goodpaster, *The Trial for Life: Effective Assistance of Counsel in Death Penalty Cases,* 58 N.Y.U.L.Rev. 299, 351 (1983). *Strickland* nevertheless requires that we determine the probable effect of advocacy that never took place on each of twelve anonymous jurors. What we see in this case is the total breakdown of the adversarial process. The juror or jurors who might have believed that mercy is appropriate for those, such as Campbell, who enter this world with the cards stacked against them never knew the hand that Campbell had been dealt and with which he played out his life.[5] No juror ever knew about Campbell's childhood, his emotional instability, his substance abuse, or his plea not to be placed near Renae Wicklund. Juror or jurors inclined to be sympathetic toward those who cannot fully control their own actions had no chance to evaluate this evidence. We do not require certainty; a reasonable probability that one juror would have voted differently if presented with the facts in mitigation is sufficient to undermine confidence in the jury's verdict. I believe that there is a "reasonable probability" that at least one such person was on Campbell's jury. Accordingly, I would find that Campbell has shown prejudice.

### CONCLUSION

Campbell had a constitutional right to effective advocacy at his sentencing hearing. What he received was no advocacy at all. In some instances, no advocacy may be deemed effective, *see Burger,* 107 S.Ct. at 3126, but this is not such a case. Rele-

---

4. Campbell also contends that defense counsels' investigation of mitigation evidence was constitutionally inadequate. While this may be true, I am satisfied that counsels' failure to put on the evidence of which they were aware deprived Campbell of his Sixth Amendment right to counsel.

5. Where the State rather than the defendant's counsel prevents the presentation of mitigating evidence, the result is clear:

> The need for treating each defendant in a capital case with that degree of respect due the uniqueness of the individual is far more important than in noncapital cases....
> ... [A] statute that prevents the sentence in all capital cases from giving independent mitigating weight to aspects of the defendant's character and record and to circumstances of

the offense proffered in mitigation creates the risk that the death penalty will be imposed in spite of factors which may call for a less severe penalty. When the choice is between life and death, that risk is unacceptable and incompatible with the commands of the Eighth and Fourteenth Amendments.

*Lockett v. Ohio,* 438 U.S. 586, 605, 98 S.Ct. 2954, 2965, 57 L.Ed.2d 973 (1978) (plurality opinion of Burger, C.J.); *see Eddings v. Oklahoma,* 455 U.S. 104, 112, 102 S.Ct. 869, 875, 71 L.Ed.2d 1 (1982) (majority of Court adopting *Lockett*). Sixth Amendment and Eighth Amendment challenges obviously are not analyzed under the same standards. However, whether the jury is deprived of relevant mitigating evidence by act of law or because of counsel's error, the effect on its decisionmaking process is the same.

vant mitigating evidence was known to counsel. In my view, it would not have opened the door to more damaging rebuttal evidence. *See Bartholomew,* 98 Wash.2d at 198, 654 P.2d 1170. Although the burden of showing the absence of sufficient mitigating circumstances was on the prosecution, it was counsels' duty to show that mitigating circumstances did indeed exist. Counsels' failure to present a case on their client's behalf was incompetent. Campbell lost his only chance for leniency, for a life sentence rather than death. Campbell has been prejudiced because "[t]he justice of his sentence was rendered unreliable by a breakdown in the adversary process caused by deficiencies in counsel's assistance." *Strickland,* 466 U.S. at 700, 104 S.Ct. at 2071, *quoted in Burger,* 107 S.Ct. at 3126. I would grant the petition for habeas corpus and require remand to the state court for a new sentencing hearing.