978 F.2d 1502
 Charles CAMPBELL, Petitioner-Appellant,
v.
James BLODGETT, Superintendent, Washington State
Penitentiary, Walla Walla, Washington; Kenneth O.
Eikenberry, Attorney General, State of
Washington, Respondents-Appellees.
 No. 89-35210.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted June 27, 1989.
Submission Withdrawn Feb. 21, 1991.
Resubmitted March 6, 1992.
Decided April 1, 1992.
 
 Al Lyon, Mestel & Muenster, Olympia, Wash., Robert Gombiner, Nance, Iaria & Gombiner, Seattle, Wash., Charles Campbell, Monroe, Wash., pro per for petitioner-appellant.
 Paul D. Weisser and John M. Jones, Asst. Atty. Gen., Olympia, Wash., for respondent-appellee.
 Appeal from the United States District Court for the Western District of Washington.
 Before: HUG, POOLE, and HALL, Circuit Judges.
 PER CURIAM:
 
 
 1
 Campbell was convicted of three counts of aggravated first degree murder and sentenced to death in the State of Washington. He filed a petition for writ of habeas corpus in the federal district court, which was denied and affirmed on appeal. Campbell v. Kincheloe, 829 F.2d 1453 (9th Cir.1987), cert. denied, 488 U.S. 948, 109 S.Ct. 380, 102 L.Ed.2d 369 (1988). This proceeding is an appeal from the denial of a second petition for a writ of habeas corpus, contesting the conviction and the imposition of the death penalty. The district court's jurisdiction is based on 28 U.S.C. §§ 2241(a) and 2254; our appellate jurisdiction is based upon 28 U.S.C. § 1291.
 
 
 2
 The issues raised concerning the second petition may be distilled to the following:
 
 
 3
 1. Campbell's absence during the empaneling of the jury violated his constitutional rights and deprived him of a fair trial.
 
 
 4
 2. Trial counsel's actions in permitting Campbell to waive his right to be present at all phases of the trial constituted ineffective assistance of counsel.
 
 
 5
 3. The Washington death penalty statute is unconstitutional as applied in this case.
 
 
 6
 4. Campbell was not given constitutionally adequate access to the courts in his post-conviction proceedings.
 
 
 7
 5. The State's statutory provision for execution by hanging constitutes cruel and unusual punishment.
 
 
 8
 6. The district court did not provide an adequate evidentiary hearing.
 
 I.
 Procedural History
 
 9
 In 1982, Charles Campbell was convicted of three counts of aggravated first degree murder and sentenced to death. His conviction was affirmed by the Washington Supreme Court. State v. Campbell, 103 Wash.2d 1, 691 P.2d 929 (1984). A stay of execution was obtained pending action by the United States Supreme Court on Campbell's petition for certiorari. On April 29, 1985, the petition was denied. Campbell v. Washington, 471 U.S. 1094, 105 S.Ct. 2169, 85 L.Ed.2d 526 (1985).
 
 
 10
 On May 17, a second death warrant was issued setting the execution for July 25, 1985. On July 11, 1985, Campbell filed a motion for stay of execution. The Washington Supreme Court treated the motion as a personal restraint petition and dismissed the petition on July 18, 1985. On July 22, 1985, Campbell filed a habeas corpus petition and a motion for stay of execution in the federal district court. The stay was granted by the district court. Campbell raised 61 issues, 40 of which had not been exhausted in state court. Because of the requirements of Rose v. Lundy, 455 U.S. 509, 519, 102 S.Ct. 1198, 1203, 71 L.Ed.2d 379 (1982), Campbell amended his petition, limiting it to the remaining 21 issues rather than having his petition dismissed and the stay dissolved. The district court considered the claims and held an evidentiary hearing on an allegation of ineffective assistance of counsel. On February 12, 1986, the petition was denied. Campbell appealed and we affirmed on October 6, 1987. Campbell v. Kincheloe, 829 F.2d 1453 (9th Cir.1987). On May 27, 1988, we denied the petition for rehearing and suggestion for en banc, and on November 7, 1988, the United States Supreme Court denied certiorari. Campbell v. Kincheloe, 488 U.S. 948, 109 S.Ct. 380, 102 L.Ed.2d 369 (1988). On January 25, 1989, we dissolved the stay of execution.
 
 
 11
 A third death warrant was then issued, setting the execution date for March 30, 1989. On March 23, 1989, the Washington Supreme Court denied a motion for a stay of execution. A petition for writ of habeas corpus was then filed with the federal district court. The petition was denied as was the request for a stay. However, a certificate of probable cause was issued. On March 28, 1989, Campbell appealed the denial of the petition to our court and we granted a stay of execution pending appeal.
 
 
 12
 In July, 1990, Campbell filed a third personal restraint petition in the Washington Supreme Court, raising further issues relating to his death sentence. The Washington Supreme Court appointed counsel, scheduled briefing, heard oral argument, and addressed the merits of Campbell's several claims. We withdrew submission of the appeal on Campbell's second habeas corpus petition on the ground that a ruling favorable to Campbell by the Washington Supreme Court could moot the action before our panel. In addition, Campbell indicated that an adverse ruling by the Washington Supreme Court would result in his filing a third petition for a writ of habeas corpus in the federal district court. We determined to withhold resubmitting the appeal of the denial of the second petition on the grounds that it would avoid piecemeal litigation to consolidate it with an appeal from the district court's ruling on the third petition for habeas corpus which would inevitably be filed either by Campbell or the State. It was our judgment that, even if Campbell's third petition were denied and a certificate of probable cause to appeal were denied by the district court, Campbell was still free to appeal that ruling. Fed.R.App.P. 22(b) specifies that even if the district court does not grant a certificate of probable cause, the notice of appeal is deemed to constitute a request to the circuit judges to issue a certificate of probable cause. Thus, any appeal of the denial of the writ would require a judgment on the part of our panel, either on whether to issue the certificate or on the merits. An order denying the certificate would, of course, be subject to en banc review, as would an affirmance or reversal of the district court's judgment on the merits.
 
 
 13
 The Supreme Court has since indicated that it would be preferable to proceed to decide the appeal on the second petition for habeas corpus rather than waiting to consolidate it with an appeal from the ruling on the third petition for habeas corpus. In re Blodgett, --- U.S. ----, 112 S.Ct. 674, 116 L.Ed.2d 669 (1992). Therefore, we proceed to rule on the denial of the second petition.
 
 II.
 Facts
 
 14
 The facts as presented by the State in the murder trial are set forth in detail in State v. Campbell, 103 Wash.2d. 1, 6-14, 691 P.2d 929, 933-37 (1984), cert. denied, 471 U.S. 1094, 105 S.Ct. 2169, 85 L.Ed.2d 526 (1985), which we briefly summarized in our consideration of the first petition as follows:
 
 
 15
 In 1974 Campbell assaulted Renae Wicklund in her home in Clearview, Washington. During the assault, Campbell forced Renae to submit to acts of sodomy by holding a knife to the throat of her one-year-old daughter, Shannah. Renae sought help after the attack from a neighbor, Barbara Hendrickson. After a 1976 trial at which both women testified against him, Campbell was convicted of first degree assault and sodomy and sent to prison.
 
 
 16
 In March 1982 Campbell was transferred to a work release facility in Everett, Washington. On April 14, 1982 Campbell returned to the home of Renae Wicklund in Clearview. There he beat Renae severely, strangled her, and slashed her throat. He then cut the throats of Shannah Wicklund, then eight years old, and Barbara Hendrickson, who, by a tragic twist of fate, was visiting Renae and Shannah that afternoon. All three victims bled to death.
 
 
 17
 Campbell v. Kincheloe, 829 F.2d at 1456.
 
 III.
 Campbell's Absence at Jury Empaneling
 
 18
 The criminal case was set for trial in Snohomish County, which is in western Washington. A motion for a change of venue was made because of pretrial publicity. In response to that motion, the trial judge determined that the jury would be selected in Spokane County, 275 miles distant in eastern Washington; the jury would then be transported to Snohomish County for the trial. Campbell told his attorney that he did not want to journey to Spokane County for the jury selection, but preferred to stay in Snohomish County to prepare for trial.
 
 
 19
 The trial judge conducted a hearing to determine whether this request should be granted. Campbell, his attorney, and the prosecutor were present. The prosecutor expressed continuing concern over this procedure and feared the defense was laying a trap for later reversal. The trial judge then expressed his preliminary view that the request could be granted if Campbell made an intelligent waiver. In making this determination, the following colloquy took place between the trial judge and Campbell.
 
 
 20
 Q. Mr. Campbell, your attorney has said that you would prefer to remain in Snohomish County while we are selecting a jury in Spokane County. Is that right?
 
 
 21
 A. Yes, it is.
 
 
 22
 Q. Are you fully aware of the fact that you do have a right to be present while a jury is selected?
 
 
 23
 A. I do.
 
 
 24
 Q. I would assume it might be a constitutional right and, if my memory is correct, unless leave is granted by the court rules, the defendant must be present at all stages of the proceedings, unless he voluntarily absents himself or--generally along those lines. You do have a right to be present while a jury is being selected.
 
 
 25
 A. I understand that.
 
 
 26
 Q. And if you stay here and a jury is picked over there, you won't be present to hear the questions your attorney asks of the jurors. You may hear those questions later and you may be of the opinion that you wished they had asked other questions. You will not be present to supply them with questions. Do you understand that?
 
 
 27
 A. Yes, I do.
 
 
 28
 Q. You may look at the jurors and say, "These aren't the type of jurors I would have wanted my lawyers to pick if I had been there." You would waive any right to have any input whatsoever in the jury selection process, other than what you can tell your attorneys ahead of time. Are you aware of that?
 
 
 29
 A. Yes, I am.
 
 
 30
 Q. And you are willing to submit the issues in this case, which may well be your guilt or innocence and may well be your life or your death, to twelve people who you have no choice in selecting and no part in selecting and wish--were not even present while they were selected?
 
 
 31
 A. Yes.
 
 
 32
 Q. You are still willing to waive your right to be present during the selection of the jurors?
 
 
 33
 A. I am.
 
 
 34
 THE COURT: Mr. Roche, again, I have not made a decision, but are there any questions you feel I should put to Mr. Campbell?
 
 
 35
 MR. ROCHE: I can't think of any other questions. I still think the defense is setting another trap in this case.
 
 
 36
 THE COURT: That is one of the things I want to think about over the evening and I will give you an opportunity to think about it also.
 
 
 37
 MR. CAMPBELL: Your Honor, I answered your questions and I would like to speak my own reasons as to why I want this. I've a lot of confidence ...
 
 
 38
 MR. MESTEL: Fine with me.
 
 
 39
 MR. CAMPBELL: I have a lot of confidence in Mr. Mestel and Mr. Savage going over there. They do that for a living. I am trying to prepare myself for my part in the trial and I am trying to relax and get my head together. What I am doing ... I feel like going to Spokane will be a real inconvenience. It's going to be a long ride. I will be cut off from things over here. I will spend all day in court, going through that kind of stuff. My time will be limited and I will not be able to prepare things I am working on right now. It is my decision to stay here in Snohomish County so that I can accomplish that.
 
 
 40
 THE COURT: You mentioned something I had not thought of. While they are in Spokane and they are selecting a jury, you would be somewhat cut off from your attorneys. You wouldn't be with them all day or see them at night. I don't know how long jury selection may be. It may be a week, it may be longer, or it may be shorter. You would have limited contact with your attorneys during that period of time.
 
 
 41
 MR. CAMPBELL: I understand what you're saying. What I am talking about, I wouldn't have the opportunity that I need to be preparing myself in a relaxed atmosphere.
 
 
 42
 THE COURT: I won't argue with you. I wanted you to understand that if they are over selecting a jury, you will have less contact with your attorneys than you would if you were also over there in the process of a jury selection.
 
 
 43
 MR. CAMPBELL: I understand that.
 
 
 44
 THE COURT: You still prefer to stay here?
 
 
 45
 MR. CAMPBELL: I do.
 
 
 46
 THE COURT: If you will prepare something in writing, I will sign it. You might well do that, anyhow, Mr. Mestel, and then I will sign that tomorrow sometime.
 
 
 47
 (There was further colloquy between the Court and counsel off the record and in chambers. Mr. Campbell waived his presence.)
 
 
 48
 Transcript of Proceedings from October 21, 1982.
 
 
 49
 On October 22, 1982, the court reconvened to hear any further concerns from counsel or Campbell regarding his absence from jury selection. The Government's primary concern was that Campbell's absence would create appealable issues, including a potential ineffective assistance of counsel claim. To address the State's concerns, the judge engaged Campbell in the following colloquy:
 
 
 50
 THE COURT: Mr. Campbell, did you hear Mr. Roche's remarks?
 
 
 51
 MR. CAMPBELL: Yes, I did.
 
 
 52
 THE COURT: Do you understand what he is saying?
 
 
 53
 MR. CAMPBELL: Yes, I do.
 
 
 54
 THE COURT: He is suggesting that if, at a later time, you are represented by other counsel--even during the course of trial, or, on appeal, you might have new counsel that might be asserting on your behalf that Mr. Mestel and Mr. Savage were incompetent in allowing you to execute such a waiver. Are you willing to waive any claim of incompetency of counsel as a result of this waiver?
 
 
 55
 MR. CAMPBELL: Specifically for waiver?
 
 
 56
 THE COURT: Yes, specifically for waiver.
 
 
 57
 MR. CAMPBELL: Nothing past jury selection or anything like that; right?
 
 
 58
 THE COURT: With respect to your nonappearance at the jury selection process.
 
 
 59
 MR. CAMPBELL: Yeah, I will waive it.
 
 
 60
 Transcript of Proceedings from October 22, 1982.
 
 
 61
 Once the court and all counsel were satisfied that Campbell's waiver was intelligent and voluntary, the judge accepted the following written waiver signed by Campbell:
 
 
 62
 The defendant being advised that he has an absolute right to travel to Spokane and be present during the selection of the jury to sit in the guilt and penalty phase of this cause of action and mindful that by not attending the jury selection proceedings he will be forever precluded from challenging those persons impaneled by his counsel or from contesting its composition, knowingly, intelligently and voluntarily waives his right to be present to allow him to remain in Snohomish County to continue his preparation for trial.
 
 
 63
 A waiver is "an intentional relinquishment or abandonment of a known right or privilege." Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). The finding of a knowing and voluntary waiver of the right to be present at trial is basically a question of fact. Brewer v. Raines, 670 F.2d 117, 120 (9th Cir.1982). State court findings of fact are entitled to a presumption of correctness in federal habeas corpus proceedings. Sumner v. Mata, 455 U.S. 591, 591-93, 102 S.Ct. 1303, 1303-05, 71 L.Ed.2d 480 (1982); 28 U.S.C. § 2254(d). Campbell has failed to overcome the presumption that the state court's finding that the waiver was knowing and voluntary was correct. The above quoted transcript reveals that Campbell clearly knew he had the right to be present during the jury selection and it was he who sought the court's approval of his request to waive that right. The court called to Campbell's attention the possible disadvantages of not being present and yet Campbell persisted in his request. The excerpts from the record are sufficient to support the state court's finding that Campbell intelligently and voluntarily waived his right to attend voir dire.
 
 
 64
 Campbell's major contention is that a defendant's presence at all proceedings of the trial is a right that cannot be waived. We now turn to the analysis of that question.
 
 
 65
 First, it is clear that a defendant charged with a felony has a fundamental right to be present at every stage of his trial. Illinois v. Allen, 397 U.S. 337, 338, 90 S.Ct. 1057, 1058, 25 L.Ed.2d 353 (1970); Bustamante v. Eyman, 456 F.2d 269, 271-72 (9th Cir.1972), on appeal after remand sub nom, Bustamante v. Cardwell, 497 F.2d 556 (9th Cir.1974) (per curiam). This right derives from the Confrontation Clause of the Sixth Amendment and the Due Process Clauses of the Fifth and Fourteenth Amendments. United States v. Gagnon, 470 U.S. 522, 526, 105 S.Ct. 1482, 1484, 84 L.Ed.2d 486 (1985) (per curiam); Pointer v. Texas, 380 U.S. 400, 406, 85 S.Ct. 1065, 1069, 13 L.Ed.2d 923 (1965); Bustamante, 456 F.2d at 273. The defendant's right to be present covers all proceedings at which the defendant's presence "has a relation, reasonably substantial, to the fulness of his opportunity to defend against the charge." Gagnon, 470 U.S. at 526, 105 S.Ct. at 1484 (quoting Snyder v. Massachusetts, 291 U.S. 97, 105-06, 54 S.Ct. 330, 332, 78 L.Ed. 674 (1934)); Faretta v. California, 422 U.S. 806, 819 n. 15, 95 S.Ct. 2525, 2533 n. 15, 45 L.Ed.2d 562 (1975) (defendant "has a right to be present at all stages of the trial where his absence might frustrate the fairness of the proceedings") (citation omitted). Voir dire is a critical stage of the criminal proceedings. Gomez v. United States, 490 U.S. 858, 873, 109 S.Ct. 2237, 2246, 104 L.Ed.2d 923 (1989).
 
 
 66
 The fact that a defendant has a right to be present does not answer the question of whether he may waive that right. Gomez held that without the consent of the defendant the voir dire of the jury could not be conducted by a magistrate instead of an Article III judge, noting both constitutional and statutory implications. Id. at 870-71, 109 S.Ct. at 2244-45. Last year the Supreme Court expanded upon Gomez and held that a defendant could waive the right to have the jury voir dire conducted by an Article III judge. Peretz v. United States, --- U.S. ----, 111 S.Ct. 2661, 115 L.Ed.2d 808 (1991). The Court noted that "the defendant's consent significantly changes the constitutional analysis." Id. 111 S.Ct. at 2667. The Court commented on the fact that a criminal defendant may waive basic constitutional rights in many circumstances. The Court stated:
 
 
 67
 The most basic rights of criminal defendants are similarly subject to waiver. See, e.g., United States v. Gagnon, 470 U.S. 522, 528, 105 S.Ct. 1482, 1485, 84 L.Ed.2d 486 (1985) (absence of objection constitutes waiver of right to be present at all stages of criminal trial); Levine v. United States, 362 U.S. 610, 619, 80 S.Ct. 1038, 1044, 4 L.Ed.2d 989 (1960) (failure to object to closing of courtroom is waiver of right to public trial); Segurola v. United States, 275 U.S. 106, 111, 48 S.Ct. 77, 79, 72 L.Ed. 186 (1927) (failure to object constitutes waiver of Fourth Amendment right against unlawful search and seizure); United States v. Figueroa, 818 F.2d 1020, 1025 (CA1 1987) (failure to object results in forfeiture of claim of unlawful postarrest delay); United States v. Bascaro, 742 F.2d 1335, 1365 (CA11 1984) (absence of objection is waiver of double jeopardy defense), cert. denied sub nom. Hobson v. United States, 472 U.S. 1017, 105 S.Ct. 3476, 87 L.Ed.2d 613 (1985); United States v. Coleman, 707 F.2d 374, 376 (CA9) (failure to object constitutes waiver of Fifth Amendment claim), cert. denied, 464 U.S. 854, 104 S.Ct. 171, 78 L.Ed.2d 154 (1983). See generally Yakus v. United States, 321 U.S. 414, 444, 64 S.Ct. 660, 677, 88 L.Ed. 834 (1944) ("No procedural principle is more familiar to this Court than that a constitutional right may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right").
 
 
 68
 Id. 111 S.Ct. at 2669. Here, we are concerned with a knowing and voluntary waiver by the defendant orally on the record and in writing after having been thoroughly examined by the court.
 
 
 69
 Campbell cites two ancient Supreme Court cases, Lewis v. United States, 146 U.S. 370, 13 S.Ct. 136, 36 L.Ed. 1011 (1892), and Hopt v. Utah, 110 U.S. 574, 4 S.Ct. 202, 28 L.Ed. 262 (1884), in support of his claim that the right to be present is nonwaivable. In both Lewis and Hopt, the defendants were not permitted to be present at the voir dire, but neither case concerned the issue of waiver. Dicta in the two cases indicated a broad nonwaivable right.[1] In recent cases, however, the Supreme Court has rejected the broad dicta of these cases.
 
 
 70
 In Illinois v. Allen, 397 U.S. at 342, 90 S.Ct. at 1060, the Supreme Court stated the following:
 
 
 71
 The broad dicta in Hopt v. Utah, supra, and Lewis v. United States, 146 U.S. 370 [13 S.Ct. 136, 36 L.Ed. 1011] (1892), that a trial can never continue in the defendant's absence have been expressly rejected. Diaz v. United States, 223 U.S. 442 [32 S.Ct. 250, 56 L.Ed. 500] (1912). We accept instead the statement of Mr. Justice Cardozo who, speaking for the Court in Snyder v. Massachusetts, 291 U.S. 97, 106 [54 S.Ct. 330, 332, 78 L.Ed. 674] (1934), said: "No doubt the privilege [of personally confronting witnesses] may be lost by consent or at times even by misconduct."
 
 
 72
 Allen, 397 U.S. at 342-43, 90 S.Ct. at 1060. Also in Snyder v. Massachusetts, the Court stated, "What was said in Hopt v. Utah, supra, and Schwab v. Berggren, supra [143 U.S. 442, 12 S.Ct. 525, 36 L.Ed. 218 (1892) ] on the subject of the presence of a defendant was dictum, and no more.... We may say the same of Lewis v. United States, supra, with the added observation that it deals with the rule at common law and not with constitutional restraints." 291 U.S. at 117 n *, 54 S.Ct. at 336 n. 2, overruled on other grounds, Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968), Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964). We are not bound, as Campbell contends, to the broad dicta from Lewis and Hopt that suggests that a defendant's right to be present during voir dire may not be waived.
 
 
 73
 Campbell also cites Bustamante, 456 F.2d 269, 274 (9th Cir.1972), on appeal after remand sub nom, Bustamante v. Cardwell, 497 F.2d 556 (9th Cir.1974) (per curiam), in support of his claim that a criminal defendant's right to be present during voir dire is nonwaivable. Bustamante, however, does not stand for this proposition. It held that counsel cannot waive the defendant's right to be present without the knowledge or consent of the defendant. Contrary to Campbell's contention, it did not speak to the issue of whether a defendant may voluntarily and intelligently waive that right himself. In that case, the defendant was not informed of the proceedings that took place in his absence. We stated that "whatever attempt counsel made in appellant's absence and without his knowledge to waive this right [to be present] was without effect." 456 F.2d at 274. The statement of the court upon which Campbell relies reads as follows:
 
 
 74
 Since appellant was in custody for a capital offense and his absence was not necessitated by disruptive behavior, we hold that he did not, indeed could not, waive his right to be present in the courtroom at trial. Furthermore, there is no evidence that he even attempted to waive this right. He could not voluntarily have waived this right before the tape was replayed, because it appears that he was not even aware of this replay until almost a year later.
 
 
 75
 Id. (emphasis added).
 
 
 76
 The phrase "indeed could not" was a passing remark and unnecessary to the actual holding of the case. It was dictum that was obviously not intended to state a broad and absolute prohibition against waiver, as it did not discuss the relevant Supreme Court cases. The remark is best understood as an observation that Bustamante could not have waived his right to be present because he was unaware of the proceedings.
 
 
 77
 In Illinois v. Allen, the Court recognized that the defendant can waive the right involuntarily through his disruptive conduct at trial. The Court held that the right to be present did not extend to a defendant who "insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom." Allen, 397 U.S. at 343, 90 S.Ct. at 1060.
 
 
 78
 The ability of the defendant voluntarily to waive his presence at a criminal trial was recognized in Taylor v. United States, 414 U.S. 17, 94 S.Ct. 194, 38 L.Ed.2d 174 (1973). There, the defendant did not return to the courthouse after the first morning of trial and the trial proceeded in his absence. The Court held that this voluntary absence constituted a waiver of his right to be present. The Court went even further in holding that the defendant need not have been expressly warned of his right to be present and that it was not necessary to have an express waiver on the record. The defendant's failure to attend and assert his right was construed as a voluntary waiver. Id. at 19-20, 94 S.Ct. at 195-196.
 
 
 79
 In United States v. Gagnon, 470 U.S. 522, 105 S.Ct. 1482, 84 L.Ed.2d 486 (1985), the Court held that the defendant had waived his right to be present at a conference between the judge, defense counsel, and a juror who had been concerned because he had noticed that the defendant was drawing sketches of the jurors. The Court held that the failure to object constituted a waiver, id. at 529, 105 S.Ct. at 1485, and that an express waiver on the record was unnecessary. Id. at 528, 105 S.Ct. at 1485.
 
 
 80
 In contrast, in the case before us, Campbell not only expressly waived his right to be present but it was he who requested and, in fact, insisted upon his absence.
 
 
 81
 The conclusion that a defendant may voluntarily waive the right to be present is consistent with the 1975 amendments to the Federal Rules of Criminal Procedure. In federal criminal trials, the rules prior to 1975 provided that "[i]n prosecutions for offenses not punishable by death, the defendant's voluntary absence after the trial has been commenced in his presence shall not prevent continuing the trial to and including the return of the verdict." Fed.R.Crim.P. 43, quoted in Allen, 397 U.S. at 343 n. 2, 90 S.Ct. at 1060 n. 2.
 
 
 82
 Following Allen, Congress amended Fed.R.Crim.P. 43 to incorporate the Allen holding. In so doing, it omitted the language that limited waiver of presence to noncapital cases. The Advisory Committee on Rules explicitly left the issue open for development by the courts. The Notes state:
 
 
 83
 The defendant's right to be present during the trial on a capital offense has been said to be so fundamental that it may not be waived. Diaz v. United States, 223 U.S. 442, 455 [32 S.Ct. 250, 253, 56 L.Ed. 500] (1912) (dictum); Near v. Cunningham, 313 F.2d 929, 931 (4th Cir.1963); C. Wright, Federal Practice and Procedure: Criminal § 723 at 199 (1969, Supp.1971).
 
 
 84
 However, in Illinois v. Allen, supra the court's opinion suggests that sanctions such as contempt may be least effective where the defendant is ultimately facing a far more serious sanction such as the death penalty. 397 U.S. at 345 [90 S.Ct. at 1061]. The ultimate determination of when a defendant can waive his right to be present in a capital case ... is left for further clarification by the courts.
 
 
 85
 18 U.S.C. app. Rule 43, Notes of Advisory Committee on Rules--1974 Amendment (1988) (emphasis added) (citations omitted).
 
 
 86
 We thus must consider whether the rule allowing voluntary waiver is applicable to capital cases. First we note the limitation of our inquiry. Campbell's absence in this case does not involve Sixth Amendment Confrontation Clause issues, as no witness or evidence was presented in his absence. We are concerned only with the due process considerations involved because of his absence from the jury voir dire. See Gagnon, 470 U.S. at 526, 105 S.Ct. at 1484. Whether the waiver of Sixth Amendment rights would invoke different considerations in a capital case, we leave for another day.
 
 
 87
 Campbell expressed his desire not to be present during the selection of the jury because he wanted to prepare for his part in the trial. Justice Frankfurter noted in Adams v. United States ex rel. McCann, 317 U.S. 269, 279-80, 63 S.Ct. 236, 241-42, 87 L.Ed. 268 (1942), the importance of allowing criminal defendants some flexibility to reject procedural safeguards written into the Constitution:
 
 
 88
 [T]he procedural safeguards of the Bill of Rights are not to be treated as mechanical rigidities. What were contrived as protections for the accused should not be turned into fetters.... To deny an accused a choice of procedure in circumstances in which he, though a layman, is as capable as any lawyer of making an intelligent choice, is to impair the worth of great Constitutional safeguards by treating them as empty verbalisms.
 
 
 89
 ... When the administration of the criminal law in the federal courts is hedged about as it is by the Constitutional safeguards for the protection of an accused, to deny him in the exercise of his free choice the right to dispense with some of these safeguards ... is to imprison a man in his privileges and call it the Constitution.
 
 
 90
 Id. We conclude that allowing the defendant this choice in a capital case does not offend due process. Although the trial judge need not have granted Campbell's request, he did not commit constitutional error in doing so.
 
 IV.
 Ineffective Assistance of Trial Counsel
 
 91
 Campbell alleges that he received ineffective assistance of trial counsel because he allowed Campbell to waive his right to be present during the jury selection. Campbell waived the claim of ineffective assistance of counsel on this specific issue. Whether or in what manner a defendant may waive in advance an ineffective assistance of counsel claim presents a novel issue that we do not reach, because we conclude the counsel's representation was not ineffective.
 
 
 92
 A defendant claiming ineffective assistance of counsel must demonstrate (1) that counsel's actions were "outside the wide range of professionally competent assistance," and (2) that the defendant was prejudiced by reason of counsel's actions. Strickland v. Washington, 466 U.S. 668, 687, 690, 104 S.Ct. 2052, 2064, 2065, 80 L.Ed.2d 674 (1984). The district court's findings of fact are reviewed under the clearly erroneous standard. Id. at 698, 104 S.Ct. at 2070. Whether the facts suffice to establish the performance and prejudice components of the ineffectiveness inquiry is a question that we review de novo. United States v. Birtle, 792 F.2d 846, 847 (9th Cir.1986) (quoting Strickland, 466 U.S. at 698, 104 S.Ct. at 2070).
 
 
 93
 The district court conducted a hearing at which the two trial counsel for Campbell testified. Trial counsel, Mark Mestel, testified that allowing Campbell to waive his presence was necessary to preserve a viable working relationship with his client and that if he did not allow Campbell to make the choice, he feared Campbell would be unwilling to assist him during trial and might be disruptive. He testified that this was a tactical decision for the purpose of effectively representing Campbell during trial. The district judge found these to be legitimate tactical reasons.
 
 
 94
 Campbell claims that because his counsel allowed him to waive the right to attend voir dire, his counsel was ineffective. We disagree. The conduct of counsel was not unreasonable in light of Campbell's wishes. Campbell desired to remain in Snohomish County to prepare his case for trial and to get mentally prepared for the whole ordeal of his criminal prosecution. We find persuasive the argument that forcing Campbell to attend the voir dire proceedings in Spokane, rather than allowing him to remain in Snohomish County, would have given rise to similar allegations based on his lack of opportunity to prepare for trial.
 
 
 95
 Campbell's counsel also feared that Campbell could be disruptive if forced to attend proceedings in Spokane. The tactical decision to support a potentially obstreperous defendant's desire to be absent from certain proceedings comports with sound professional judgment. The defense counsel also sought to preserve the attorney-client relationship, which could have been damaged if counsel had frustrated Campbell's objectives.
 
 
 96
 In Strickland, the Supreme Court discussed the dangers of reviewing an attorney's conduct with the benefit of hindsight, rather than considering the context in which the attorney's decisions were made:
 
 
 97
 Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.
 
 
 98
 Strickland, 466 U.S. at 689, 104 S.Ct. at 2065 (citation omitted). Reviewing in context the defense counsel's decision not to oppose Campbell's request to be absent from voir dire, we conclude that it falls well within the bounds set forth in Strickland.
 
 V.
 
 99
 Constitutionality of Washington's Death Penalty Statute
 
 
 100
 Campbell challenges the constitutionality of Washington's death penalty statute, R.C.W. § 10.95, on the grounds that it creates a mandatory death sentence formula and fails to provide a reliable standard by which to determine whether a sentence of death should be imposed. The district court rejected the first argument on its merits, and refused to consider the second argument because Campbell raised it in his first petition.
 
 
 101
 * Campbell first argues that the Washington death penalty statute creates a mandatory death penalty formula because the sentencer is prohibited from making an individualized determination as to whether death is the appropriate penalty. Specifically, he argues that the Washington statute "requires the sentencing authority to engage in a balancing test" that will determine whether or not the defendant receives the death penalty.
 
 
 102
 Statutes that create a mandatory death penalty are prohibited because they preclude the jury from making determinations on an individual basis. Sumner v. Shuman, 483 U.S. 66, 78, 107 S.Ct. 2716, 2723, 97 L.Ed.2d 56 (1987). Thus, as long as the Washington statute provides for an individualized determination, Campbell's argument must fail. Contrary to Campbell's contentions, there is nothing in the language of the statute suggesting that the jury is required to engage in a balancing test, or that in the event it finds that the factors are in balance, it must impose a sentence of death. Indeed, Campbell held that the Washington statute created a presumption of leniency. Campbell v. Kincheloe, 829 F.2d at 1465. The Washington statute "clearly indicates that the burden of proof is on the state to convince the jury beyond a reasonable doubt that there are not sufficient mitigating circumstances to merit leniency." Id. at 1466.
 
 
 103
 The Supreme Court's recent decision in Walton v. Arizona, 497 U.S. 639, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990), reinforces our prior decision. In Walton, the Court held that the Arizona statute did not create a mandatory death penalty formula even though it stated that the court "shall" impose the death penalty once the court finds one or more aggravating circumstances, and that the mitigating circumstances do not require leniency. Id. 497 U.S. at 650-51, 110 S.Ct. at 3056. In reaching this decision, the Court stated that " 'the requirement of individualized sentencing in capital cases is satisfied by allowing the jury to consider all relevant mitigating evidence.' " Id. (quoting Blystone v. Pennsylvania, 494 U.S. 299, 110 S.Ct. 1078, 1083, 108 L.Ed.2d 255 (1990)). Under Walton, as long as the statute does not preclude the sentencer from considering any mitigating factors, it comports with the principle of individualized sentencing. Walton, 497 U.S. at 650-51, 110 S.Ct. at 3056 (citing Blystone, 494 U.S. at 306-07, 110 S.Ct. at 1083). Because the Washington statute clearly allows the sentencer to consider all mitigating factors, it does not create a mandatory death penalty formula.
 
 B
 
 104
 The district court properly refused to reach the merits of Campbell's second argument because Campbell raised it in his 1985 petition. Rule 9(b) of the rules governing section 2254 cases in the United States District Courts allows dismissal of a "successive" petition if it fails to allege a "new or different ground for relief and the prior determination was on the merits." 28 U.S.C. § 2254 foll. Rule 9(b) (1988). Rule 9(b) codifies the holding in Sanders v. United States, 373 U.S. 1, 15-16, 83 S.Ct. 1068, 1077, 10 L.Ed.2d 148 (1963), that a court, in its discretion, may dismiss a petition as successive if the ground for relief was previously raised, the prior determination was on the merits, and the ends of justice do not demand a redetermination. See Rule 9(b) advisory committee's note. This is equally applicable to a specific allegation in a petition for habeas corpus. The court need not address an allegation if it is merely a successive argument to one already made and ruled upon.
 
 
 105
 A ground is a "legal basis for granting relief." Sanders, 373 U.S. at 16, 83 S.Ct. at 1077. A petitioner may not create a different ground merely by alleging different facts, asserting different legal theories, or couching the argument in different language. Id. If the newly raised facts, theories or arguments are introduced to support the ground raised in the prior petition, that ground may be dismissed as successive.
 
 
 106
 A petitioner may avoid dismissal of a ground on which the petition is based by demonstrating that the "ends of justice would be served by permitting the redetermination of the ground." Id. "If purely legal questions are involved, the applicant may be entitled to a new hearing upon showing an intervening change in the law or some other justification for having failed to raise a crucial point or argument in the prior application." Id. at 17, 83 S.Ct. at 1078. The burden is on Campbell to prove that the ends of justice demand a redetermination. Id.
 
 
 107
 Although Campbell artfully phrases his current allegation, an examination of his basic claim reveals that the "ground" for relief in this petition is the same as that raised in the 1985 petition, upon which we have already ruled. One of Campbell's arguments in the 1985 petition challenged the constitutionality of R.C.W. § 10.95 on the ground that it failed "to adequately channel and guide jury sentencing discretion" because section 10.95.070 authorized the jury to consider any relevant factors.[2] Campbell, 829 F.2d at 1464. Because the Washington Supreme Court has interpreted the section to limit appropriately the jury's discretion, this court found Campbell's challenge to be meritless. Id.
 
 
 108
 In the present petition, Campbell again argues[3] that the statute does not channel the jury's discretion, but this time he points to section 10.95.060(4).[4] Campbell carefully refrains from using language from the prior decision. For instance, he uses the phrase "adequate and reliable standards" in lieu of the more traditional phrase "channel the jury's discretion." Furthermore, he shifts the focus of his argument by asserting that "the sentencer is given no guidance as to what factors may be considered in determining the appropriateness of a death sentence in a particular case."
 
 
 109
 This issue was fully explored in the majority opinion and the dissent. Despite the semantic changes, Campbell's argument is not different from the one he raised in his 1985 petition. While Campbell points to a different section of the Washington death penalty statute, his argument represents merely another theory for the same ground. Sanders makes clear that a petitioner may not create a new ground by alleging an alternate legal theory. Sanders, 373 U.S. at 16, 83 S.Ct. at 1077. Because Campbell has offered no reason why the ends of justice demand a redetermination of the issue, we hold that his claim was properly denied.
 
 C
 
 110
 Campbell also challenges the jury instructions, arguing that the instructions "unconstitutionally limited those factors the jury could consider in mitigation." He correctly acknowledges that the Washington death penalty statute does not limit the jury's consideration of mitigating factors. Indeed, the statute explicitly states that the jury may consider any relevant factors, including but not limited to" eight enumerated factors. R.C.W. § 10.95.070. Campbell argues that although the jury was aware that it could consider unenumerated factors, the jury was misled by "qualifications attached to some of the enumerated factors."
 
 
 111
 The district court denied relief because it found that Campbell had raised this claim in the prior petition. We agree. The jury instruction given in this case was taken verbatim from R.C.W. § 10.95.070. As we have already noted, Campbell challenged this section directly in his prior petition. Campbell is now simply using the jury instruction argument as another method of challenging the constitutionality of the statute. This argument is nothing but a new legal theory advanced to support his prior constitutional challenge. See Sanders, 373 U.S. at 16, 83 S.Ct. at 1077.
 
 
 112
 Campbell has not demonstrated any reason why the ends of justice demand a redetermination of this issue. The district court properly denied habeas relief on this ground.VI.
 
 
 113
 Right to Counsel and Meaningful Access to the Courts
 
 
 114
 Campbell argues that he was denied effective assistance of counsel and meaningful access to the courts in both his state and federal habeas proceedings. He argues that his lawyers were not given adequate time to prepare properly for the collateral attacks on his convictions. He also claims that "meaningful access" to the courts requires not only representation by counsel, but adequate time to prepare. The district court held that counsel's performance satisfied the standard enunciated in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and that Campbell had meaningful access to the courts.
 
 
 115
 Two recent Supreme Court decisions directly address and dispose of all but the second prong of Campbell's meaningful access argument. In Pennsylvania v. Finley, 481 U.S. 551, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987), the Court held that there is no constitutional right to counsel in state habeas proceedings. Id. at 556-57, 107 S.Ct. at 1993-94. The Court reaffirmed this rule in Murray v. Giarratano, 492 U.S. 1, 109 S.Ct. 2765, 106 L.Ed.2d 1 (1989), holding that Finley applies in both noncapital and capital cases, and that meaningful access to the courts does not require appointment of counsel. Id. at 12, 109 S.Ct. at 2772.
 
 
 116
 Because both Finley and Giarratano were decided after Campbell's conviction became final in 1985, we must consider whether Teague v. Lane, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), prevents their application to Campbell's case. In Teague, the Court held that new constitutional rules of criminal procedure may not be applied retroactively to cases that had completed direct review prior to the decision creating the new rule. Id. at 310, 109 S.Ct. at 1075 (plurality opinion). Our threshold inquiry then, is whether Finley and Giarratano announced new rules which may not be applied in this habeas action. According to Teague,
 
 
 117
 a case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government.... To put it differently, a case announces a new rule if the result was not dictated by precedent existing at the time the defendants's conviction became final.
 
 
 118
 Teague, 489 U.S. at 301, 109 S.Ct. at 1070 (emphasis in original).
 
 
 119
 In Finley, the Court held that the right to counsel does not extend to post-conviction procedures. 481 U.S. at 555-56, 107 S.Ct. at 1993-94. In reaching this conclusion, the Court stated:
 
 
 120
 We have never held that prisoners have a constitutional right to counsel when mounting collateral attacks upon their convictions, and we decline to so hold today. Our cases establish that the right to appointed counsel extends to the first appeal of right, and no further.... We think that since a defendant has no federal constitutional right to counsel when pursuing a discretionary appeal on direct review of his conviction, a fortiori, he has no such right when attacking a conviction that has long since become final upon exhaustion of the appellate process.
 
 
 121
 Id. at 555, 107 S.Ct. at 1993 (citations omitted). Thus, the Court itself indicated that its decision follows directly from its holdings in previous cases. Indeed, the Court relied heavily on its opinion in Ross v. Moffitt, 417 U.S. 600, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974), stating that the analysis in that case "forecloses respondent's constitutional claim." Finley, 481 U.S. at 556, 107 S.Ct. at 1994. Because the rule in Finley was obviously a straightforward application of precedent, we cannot say that it broke new ground or was not dictated by precedent. We therefore apply Finley retroactively to the present case.
 
 
 122
 We reach the same conclusion with regard to Giarratano. In that case, the Court reaffirmed Finley, holding that it applies to both capital and noncapital cases. Giarratano, 492 U.S. at 12, 109 S.Ct. at 2772. A thorough review of the principles and holdings in the Court's previous death penalty cases led the Court to conclude that "these cases require the conclusion that the rule of Pennsylvania v. Finley should apply no differently in capital cases than in noncapital cases." Id. at 10, 109 S.Ct. at 2770 (emphasis added). It also dismissed the prisoners' argument that the right to meaningful access to the courts, announced in Bounds v. Smith, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977), required appointment of counsel. Giarratano, 492 U.S. at 4, 109 S.Ct. at 2767. According to the Court, the prisoners's proposed rule "rest[ed] on a misreading" of Bounds. Id. Given the Court's analysis, we are convinced that Giarratano did not announce a new rule of constitutional jurisprudence, but instead was a straightforward application and clarification of existing precedent.
 
 
 123
 We now turn to the merits of Campbell's arguments. Campbell's ineffective assistance of counsel claim fails under Finley and Giarratano; Campbell had no right to counsel in his federal and state post-conviction proceedings.[5] Giarratano, 492 U.S. at 10, 109 S.Ct. at 2770; Finley, 481 U.S. at 555-56, 107 S.Ct. at 1993-94. "Since [he] had no constitutional right to counsel, he could not be deprived of the effective assistance of counsel...." Wainwright v. Torna, 455 U.S. 586, 587-88, 102 S.Ct. 1300, 1301-02, 71 L.Ed.2d 475 (1982). Similarly, Giarratano disposes of Campbell's contention that meaningful access to the courts requires the appointment of counsel.[6] Giarratano, 492 U.S. at 11-12, 109 S.Ct. at 2771-2772. We thus reject Campbell's ineffective assistance claim and the first prong of Campbell's meaningful access argument.
 
 
 124
 The second prong of Campbell's argument alleges that meaningful access required the state supreme court to grant his counsel adequate time to prepare his post-conviction petitions. Campbell filed his first state personal restraint petition on July 11, 1985. The Washington Supreme Court denied his petition on July 18, 1985, just seven days before his scheduled execution. Campbell's attorneys then filed the first federal habeas petition, and the federal district court granted a stay of execution on July 22, 1985. In that petition, Campbell's attorneys raised 61 claims, 40 of which had never been raised in state court. The district court dismissed the petition because it contained unexhausted claims, and Campbell's attorneys filed an amended petition including only exhausted claims. Despite this ruling, Campbell did not file a concurrent petition in state court raising these unexhausted claims. Campbell's federal petition was ultimately denied, and appellate review of this petition concluded in 1987. Campbell waited, however, until late 1988 to seek counsel in order to raise the unexhausted claims in a second state personal restraint petition.
 
 
 125
 Although Campbell alleges that the state supreme court failed to grant his counsel adequate time to prepare both times he sought state collateral review, the court set a strict filing deadline only with regard to his second state personal restraint petition.[7] In August 1988, almost one year after this court affirmed the district court's denial of habeas relief, Campbell petitioned the Washington Supreme Court to provide him with counsel in order to pursue the 40 unexhausted claims in a second state personal restraint petition. Ultimately, the state supreme court appointed counsel and directed them to file, within five working days, a memorandum demonstrating "that there exists in this matter issues not previously litigated which have sufficient potential merit to require further consideration by this court, and if necessary to permit such consideration, the issuance of a stay." Campbell asserts that this deadline denied him meaningful access to the courts.
 
 
 126
 The touchstone of Bounds is that the "State must assure the indigent defendant an adequate opportunity to present his claims fairly." Bounds, 430 U.S. at 823, 97 S.Ct. at 1495 (quotation omitted). Thus, even though Campbell had no right to counsel under the meaningful access doctrine, his counsel, once appointed, must be given a fair chance to represent him. Given the procedural history of Campbell's case, the state court satisfied its constitutional obligation under Bounds. In his second state personal restraint action, Campbell's attorneys challenged the 40 claims dismissed by the district court as unexhausted. Because Campbell's prior counsel had discovered and presented these claims in his first federal habeas petition, Campbell's new counsel did not have the burden of having to dig through the record in search of any possible errors. Instead, they had a total of seven days (five working days plus the weekend) to brief the issues already presented in Campbell's 1985 habeas petition. We also note that Campbell was aware that he needed to raise the unexhausted claims in state court since 1985, a period of three years. He thus had ample time in which to review the record, become familiar with the law, and brief the issues he sought to raise in his second state personal restraint petition. Even if Campbell's strategy was to wait and see if this court agreed that the 40 claims were indeed unexhausted, Campbell still had adequate time to prepare, as the appellate review process ended in 1987.
 
 
 127
 In light of the fact that Campbell knew, since 1985, that these claims had to be reviewed by the state court, and that the issues had been defined in his first habeas petition, we find that the state court did not deny Campbell meaningful access by imposing the five-working-day limit in which to file a written memorandum on these claims.
 
 VII.
 Eighth Amendment Challenges
 
 128
 Campbell makes an additional constitutional challenge to the Washington death penalty statute on the ground that it violates the Eighth Amendment prohibition against cruel and unusual punishment. Campbell first argues that the Washington death penalty statute violates the Eighth Amendment because it allows the defendant to choose between two methods of execution: hanging or lethal injection.[8] Specifically, Campbell contends that the statute violates the prohibition against cruel and unusual punishment because it forces him "to aide [sic] in the method of his own demise by electing death by intravenous injection, the less frightening method, to escape death by hanging." Campbell offers no support for his position other than allegations regarding his intense fear that hanging might result in suffocation and strangulation. The district court found no constitutional violation. We also reject Campbell's claim.
 
 
 129
 Although no federal court has addressed this issue, logic dictates against Campbell's position. No matter what statutory scheme is enacted, most people sentenced to death will fear their execution. Any fear that results from the prisoner's opportunity to choose the method of his execution is not unusual punishment. As for "cruelty," allowing the defendant to choose the "less frightening" method appears to us to be a more humane approach because it gives the defendant an opportunity to avoid or lessen his particular fear. See Gregg v. Georgia, 428 U.S. 153, 175, 96 S.Ct. 2909, 2926, 49 L.Ed.2d 859 (1976) ("We may not require the legislature to select the least severe penalty possible so long as the penalty selected is not cruelly inhumane ") (emphasis added). We conclude that allowing death row inmates to choose between hanging and lethal injection is not cruel and unusual punishment in violation of the Eighth Amendment.
 
 
 130
 Campbell next argues that death by hanging by its very nature violates the Eighth Amendment and further, that the Eighth Amendment is violated because the State of Washington does not have a qualified hangman.[9] The district court rejected Campbell's claim on the merits. We find the issue non-justiciable, however, because Campbell may choose between hanging and lethal injection, and thereby avoid his constitutional objection. Under Article III of the Constitution, this court may only entertain cases or controversies. U.S. Const. art. III, § 2. This means that the dispute between the parties must be real or actual. See Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 239-41, 57 S.Ct. 461, 463-64, 81 L.Ed. 617 (1937) ("a justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot.... The controversy must be ... real and substantial.").
 
 
 131
 Here, there is not a real dispute. Under R.C.W. § 10.95.180, Campbell is permitted to choose between hanging and lethal injection: "The punishment of death ... shall be inflicted either by hanging by the neck or, at the election of the defendant, by intravenous injection of a substance or substances in a lethal quantity." R.C.W. § 10.95.180. Therefore, Campbell has within his power the ability to avoid hanging and put an end to this fear. By exercising his right to choose lethal injection, Campbell has a means to moot his constitutional objection. Thus, his failure to take advantage of the opportunity to avoid hanging essentially fabricates a case or controversy.
 
 
 132
 This court may not decide a question that, but for Campbell's choice, would not have arisen. Unlike a true case or controversy, where the complainant needs judicial intervention in order to eliminate another's interference with protected rights, Campbell has the present ability and opportunity to make his problem disappear. See United Public Workers v. Mitchell, 330 U.S. 75, 90, 67 S.Ct. 556, 564, 91 L.Ed. 754 (1947) (a claim is considered a justiciable controversy "when definite rights appear upon one side and definite prejudicial interferences upon the other.") (footnote omitted). We conclude that because Campbell may elect to redress his constitutional objection by avoiding hanging, his challenge is non-justiciable. See DeShields v. State, 534 A.2d 630, 639 (Del.1987), cert. denied, 486 U.S. 1017, 108 S.Ct. 1754, 100 L.Ed.2d 217 (1988).
 
 VIII.
 Adequate Evidentiary Hearing
 
 133
 Campbell alleges that the district court improperly compacted consideration of his claims into a single day of hearings and thus did not provide an adequate evidentiary hearing. Campbell also contends that the district court's finding of probable cause to appeal but then denying a stay of execution was error. This latter contention is moot since we granted the stay of execution and have afforded a full opportunity to present all of his contentions in this appeal. The major concern on this appeal is whether the district court afforded an adequate opportunity to develop, at a factual hearing, any facts upon which the petition was based that were not adequately developed in the State court records or in the prior petition heard by the district court. The district court properly established expedited procedures in accordance with the standards set forth in Barefoot v. Estelle, 463 U.S. 880, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983) and afforded Campbell and his attorneys wide latitude at the hearing to present whatever evidence they deemed appropriate in support of the petition.
 
 
 134
 A federal district court is required to conduct an evidentiary hearing on particular contentions where the petitioner "alleges facts which, if true, would entitle him to relief." Townsend v. Sain, 372 U.S. 293, 312, 83 S.Ct. 745, 757, 9 L.Ed.2d 770 (1963). The court need not conduct an evidentiary hearing on allegations in the petition that are "conclusory and wholly devoid of specifics." Bashor v. Risley, 730 F.2d 1228 (9th Cir.), cert. denied, 469 U.S. 838, 105 S.Ct. 137, 83 L.Ed.2d 77 (1984) (citation omitted). On allegations that involve only issues of law, obviously an evidentiary hearing is not required.
 
 
 135
 A factual hearing was conducted on the allegations concerning effective assistance of counsel. As previously noted, the two attorneys representing Campbell in the State trial testified and were examined by Campbell's attorneys. Three other witnesses testified. Campbell claims that there was an inadequate opportunity to prepare for that hearing and that further evidence could have been produced. This evidence would have been addressed to the argument that the jury selection process is important in a trial and that prejudice had resulted from Campbell's not being present. In light of our resolution of this issue on the basis that Campbell knowingly and voluntarily waived his right to be present at the time of the jury voir dire further evidence concerning the possible effect on the outcome would not affect our determination of this issue.
 
 
 136
 The only other issue which Campbell raises on appeal that could have involved testimony and could have arguably required a further factual hearing is the contention that hanging constitutes cruel and unusual punishment. Because we have resolved this issue on the basis that Campbell had a choice to elect lethal injection as the method of execution, factual questions concerning the manner in which a hanging execution takes place is not pertinent. Thus, we find no failure on the part of the district court to conduct necessary factual inquiry.
 
 IX.
 Conclusion
 
 137
 We affirm the district court's denial of Campbell's petition for a writ of habeas corpus. Campbell knowingly and voluntarily waived his right to be present at the voir dire of the jury; his trial counsel were not ineffective in permitting him to do so; the constitutionality of the Washington statute was adjudicated in our prior opinion and the ends of justice do not require a redetermination. Campbell had adequate access to the court in asserting his post-conviction remedies; and he was afforded an adequate evidentiary hearing by the federal district court.
 
 
 138
 AFFIRMED.
 
 
 
 [1]
 The Court in Lewis stated that "[a] leading principle that pervades the entire law of criminal procedure is that, after indictment found, nothing shall be lawfully done in the absence of the prisoner." Lewis, 146 U.S. at 372, 13 S.Ct. at 137
 The Court in Hopt stated:
 We are of opinion that it was not within the power of the accused or his counsel to dispense with the statutory requirement as to his personal presence at the trial.... The public has an interest in his life and liberty. Neither can be lawfully taken except in the mode prescribed by law. That which the law makes essential in proceedings involving the deprivation of life or liberty cannot be dispensed with or affected by the consent of the accused, much less by his mere failure, when on trial and in custody, to object to unauthorized methods.
 Hopt, 110 U.S. at 579, 4 S.Ct. at 204.
 
 
 [2]
 Section 10.95.070 states in relevant part:
 In deciding the question posed by R.C.W. 10.95.060(4), the jury, or the court if a jury is waived, may consider any relevant factors, including but not limited to the following....
 R.C.W. § 10.95.070.
 
 
 [3]
 In his supplemental opening brief, filed pro se, Campbell challenges section 10.95.070. While he concedes that this issue was addressed on the merits in Campbell v. Kincheloe, 829 F.2d 1453 (9th Cir.1987), he believes that "the ends of justice" require a redetermination. We disagree. Campbell's reliance on State v. Rupe, 108 Wash.2d 734, 743 P.2d 210 (1987) (Rupe II), cert. denied, 486 U.S. 1061, 108 S.Ct. 2834, 100 L.Ed.2d 934 (1988), as demonstrating an intervening change in the law regarding this section is misplaced. The defendant in Rupe II challenged the use of section 10.95.070 in jury instructions because it allegedly confused the jury. The court rejected defendant's challenge, stating that "[i]t is well-settled that the court may instruct the jury in the language of the statute." Rupe II, 743 P.2d at 227. Rather than make new law, Rupe II reaffirmed existing law
 
 
 [4]
 This section states:
 Upon conclusion of the evidence and argument at the special sentencing proceeding, the jury shall retire to deliberate upon the following question: "Having in mind the crime of which the defendant has been found guilty, are you convinced beyond a reasonable doubt that there are not sufficient mitigating circumstances to merit leniency?"
 R.C.W. § 10.95.060(4).
 
 
 [5]
 Campbell claims that the state's termination of its contract with Evergreen Legal Services one month before his original execution date requires an evidentiary hearing to determine whether the state deliberately interfered with the right to counsel. Since Campbell had no right to counsel, his claim is without merit
 
 
 [6]
 Campbell petitioned the Washington Supreme Court for appointment of counsel both times he desired to initiate state post-conviction proceedings. The court appointed counsel for the first state petition, but initially refused to appoint counsel when, over three years later, Campbell decided to initiate a second state challenge. After Campbell's second request for counsel, which was made one month before his scheduled execution and was accompanied by an amicus request in support filed by two attorneys, the court appointed counsel
 
 
 [7]
 Because the state terminated its contract with Evergreen Legal Services, who had agreed to represent Campbell, one month before his scheduled execution, the Washington Supreme Court immediately appointed the Washington Appellate Defender Association to represent Campbell in his first state personal restraint petition. Unlike the second petition, the court did not set any strict filing deadline. We therefore only address the court's actions with regard to the second personal restraint petition
 
 
 [8]
 The Washington Supreme Court has held that the statute did not violate the Eighth Amendment by allowing the defendant to choose between hanging and lethal injection. State v. Rupe, 101 Wash.2d 664, 683 P.2d 571 (1984)
 
 
 [9]
 He also argues pro se that hanging violates the equal protection clause because not all states subject death row inmates to this method of execution. Again, we disagree. Campbell correctly acknowledges that the equal protection clause guarantees equal treatment among classes of people who are similarly situated. See John E. Nowak, Ronald D. Rotunda & J. Nelson Young, Constitutional Law § 14.2 (3d ed. 1986). He fails to recognize, however, that only the state of Washington's actions are pertinent to his equal protection inquiry because only the state of Washington is attempting to apply its law to Campbell. Here, the state of Washington treats all capital inmates equally; each inmate has the opportunity to choose between hanging and lethal injection. Thus, the fact that not every death row inmate is hanged results not from the state's actions, but from the personal choice of the individual inmate